The mother appeals from an order of the Juvenile Court of Jackson County finding her two minor children dependent and placing their legal custody with their paternal aunt and uncle.
The issues on appeal are whether the evidence was sufficient to support the trial court's finding of dependency and award of custody and whether the trial court erred to reversal in allowing certain evidence to be introduced at the hearing. Additionally, the mother alleges that the trial court erred in failing to grant a new trial, or alternatively, to alter, amend, or vacate the judgment. We find no error requiring reversal and affirm.
The following pertinent facts are revealed by the record:
In February, 1981, the appellant, Mrs. Sanders, contacted the Department of Pensions and Security (D.P.S.) complaining that her husband was abusing her. This was not the first time that Mrs. Sanders had complained to D.P.S. about her husband's abuse toward her. Without going into detail at this time, it is safe to say that the Sanderses have had a troubled and turbulent marriage from the start. As a result of D.P.S.'s investigation into the Sanderses, D.P.S. filed a petition alleging the dependency of Mrs. Sanders's two children.
In September, 1981, the Sanderses consented to D.P.S. receiving temporary custody of the children. The children were placed in a foster home and remained there until January, 1982. At that time the children were placed in the Guthries' home at the Guthries' request. The Guthries, the paternal aunt and uncle and the appellees here, petitioned for permanent custody of the children alleging that the children were dependent within the meaning of § 12-15-1, Ala. Code (1975).
After an ore tenus hearing, the trial court found that the children were dependent "in that [their] home by reason of neglect, cruelty or depravity on the part of her parents is an unfit and improper place for [them]. . . ." The trial court further found that the Guthries were qualified to care for the children and awarded the Guthries legal custody.
Thereafter, Mrs. Sanders petitioned for a new trial, or in the alternative to alter, amend or vacate the judgment based partly on the grounds of change in circumstances in that she had filed for divorce and moved from her husband's house. Mrs. Sanders's motion was denied and, through able counsel who has favored this court with an excellent brief, she appeals.
Mrs. Sanders first contends that the evidence was insufficient to support the trial court's finding of dependency. Mrs. Sanders bases her contention partly on the supposition that all of her problems were the result of her conflict with her husband, that she loved and cared greatly for her children, and that she never abused the children. Be that as it may, this court finds that the record contains sufficient evidence from which the trial court could find the children dependent.
Section 12-15-65 (e), Ala. Code (1975), authorizes the trial court to make proper disposition of cases such as the present case if "the court finds from clear and convincing evidence, competent, material and relevant in nature, that the child is dependent and in need of care or supervision. . . ."
In the present case, viewing the record with the attendant presumptions accorded the trial court's actions, the evidence shows an unstable home life that had a detrimental effect on the children. At best, the evidence shows that the parents were so overwhelmed with their own conflicts and problems that the best interests of the children became secondary.
From the start of their marriage, the Sanderses experienced difficulties in maintaining a stable relationship. A pattern soon developed where Mr. Sanders would *Page 1315 
start drinking and abuse his wife, both physically and mentally. Mrs. Sanders would respond by leaving home, taking the children with her most times. Since late 1980, Mrs. Sanders has left home on at least a dozen occasions, and made at least some twenty-odd moves from place to place in search of somewhere to stay. On one occasion, Mrs. Sanders was forced to stay the night in a hospital lobby.
During these times, Mrs. Sanders did try to obtain assistance from D.P.S., Mental Health, and other agencies. On two occasions, Mrs. Sanders stayed in a home for battered wives, the most recent being just a few months before the dependency hearing. However, the evidence shows that neither Mrs. Sanders nor Mr. Sanders ever stayed with any one program long enough for it to be beneficial.
On at least two occasions, Mr. Sanders beat Mrs. Sanders to where she was visibly bruised and battered. There was some testimony that Mr. Sanders once pulled a gun on Mrs. Sanders and then another time tore Mrs. Sanders's clothes off her body and burned them, threatening to burn Mrs. Sanders as well.
In response to at least one of these episodes of violence, Mrs. Sanders tried to commit suicide by taking an overdose of pills and she required hospitalization.
Mrs. Sanders frequently expressed the desire to kill her husband, although she claims this was only done in anger. Mrs. Sanders did have her husband arrested for child abuse on one occasion although at the trial she claimed that she had lied about that because she was "mad" at her husband for drinking.
The children were present during most of these instances of fighting and arguing. There was testimony that after the children were placed in the foster home, relations between Mr. and Mrs. Sanders remained the same and they made small effort to improve.
It is clear from the above that there was sufficient evidence from which the trial court could find the children dependent. The record reveals the couple were married for seven stormy years. The mother never finished high school and has never held a job. The father is possibly an alcoholic who abuses his wife physically and mentally. The mother is forever leaving and coming back home. The implication is that she doesn't know how to take control of her life. There is evidence that she is mentally and emotionally unstable. She has attempted suicide at least once, possibly twice. Neither parent can be said to have made a serious effort to utilize all the help and assistance offered them.
Furthermore, and most importantly, the evidence shows that the children were adversely affected by their turbulent home life. It was uncontradicted that the children were present during most of the parents' troubles. There is some indication that the oldest child, aged 5, was becoming a discipline problem and the youngest child was withdrawn and would not talk. It can be gathered from the evidence that the parents' problems prevented them from looking after the best interests and welfare of the children. While the mother obviously loves and cares a great deal for her children, the guiding principle and ultimate consideration in cases such as this one is the best interests and welfare of the children. Hamilton v. State,410 So.2d 64 (Ala.Civ.App. 1982). In the instant case the trial judge felt that the mother's problems prevented her from adequately caring for the welfare of her children and that as a consequence of such neglect, the children are dependent within the meaning of § 12-15-1, Ala. Code (1975). We cannot say that the court erred in so doing.
Mrs. Sanders also contends that the trial court erred in awarding custody to the Guthries in that such was not the least restrictive disposition the trial court could have made. This court disagrees.
Once a trial court has found that a child is dependent, § 12-15-71, Ala. Code (1975), *Page 1316 
authorizes the court to make any of a number of dispositions including transferring legal custody to a relative who, after study by the probation services, is found by the court to be qualified to receive and care for the child.
In the instant case, the mother does not contend that the Guthries are unfit to receive custody, but that the court could have made another disposition less restrictive than awarding legal custody. In support of her position, Mrs. Sanders relies on a line of cases involving the termination of parental rights. That is not the case here. The parental rights of Mrs. Sanders were not terminated. The award of custody in the present case is not res judicata and should the parents ever straighten their problems out, it is conceivable that they could regain custody. Evans v. Wilkes, 48 Ala. App. 363,265 So.2d 145 (1972). The alternative would be to maintain temporary custody of the children with D.P.S. Under the present circumstances, this court cannot see how that would be in the best interests of the children. Had Mrs. Sanders's parental rights been terminated a different result might be warranted.
Mrs. Sanders's next contention is that the trial court erred to reversal by allowing hearsay testimony from representatives of D.P.S. Assuming, arguendo, that the evidence was inadmissible, this court finds that such evidence was merely cumulative and, in any event, harmless error.
Mrs. Sanders and other witnesses, such as the Guthries and the drug and alcohol counselor, among others, provided substantially the same evidence as that objected to as being hearsay. Even without the evidence in question there remained sufficient evidence from which the trial court could have found as it did, hence no error. Worley v. Jinks, 361 So.2d 1082
(Ala.Civ.App. 1978).
Mrs. Sanders also contends that the trial court erred in refusing to grant a new trial based partly at least on a change in circumstances, to wit, she no longer resided with her husband and had filed for divorce. However, the evidence at the hearing on the motion shows that Mrs. Sanders had only moved out and filed for divorce the week before the hearing. Furthermore, Mrs. Sanders admitted that she still saw her husband daily. It appears that this was merely a continuation of a pattern already established by Mrs. Sanders. Additionally, Mrs. Sanders admitted not telling the truth at trial even though she had consistently maintained at that time that she did not lie. Obviously there was not a sufficient change in circumstances to justify a new trial. If anything, Mrs. Sanders's position seems to have worsened. She had moved in with her sister and her husband and child into a two bedroom house with no electricity and no water. Mrs. Sanders still did not have a job and her sister and brother-in-law were also unemployed.
In view of the above, i.e., the sufficiency of the evidence, etc., we need not consider Mrs. Sanders's contention that she has been deprived of a constitutional right to maintain a family.
This case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.