This is a custody case involving a child in need of supervision (CHINS).
During ore tenus proceedings the fifteen-year-old child was determined to be a CHINS, and the trial court immediately proceeded with a hearing on the disposition of the child. Following that hearing the trial court placed custody of the child with the child's half-brother and the half-brother's wife.
The child's father appeals. We affirm.
The father contends that the trial court erred in giving custody to the child's half-brother because it failed to presume that he, as the child's natural parent, was entitled to custody. He contends that the presumption that he is entitled to custody of the child can only be overcome by clear and convincing evidence that the child's best interests would be served by removing him from the father.
We disagree. The father appears to be confused as to the proper standards governing the determination of custody in a case such as this one. *Page 633 
This case was not merely a custody dispute between the father and the child's half-brother. It was a CHINS case, which is governed by specific statutory procedures and standards. See §§ 12-15-50 through -76, Ala. Code (1975) (1986 Repl.Vol.).
At the ore tenus proceedings of December 9, 1987, all the parties, including the father, agreed or admitted that the child was a CHINS. Once that issue was determined, the trial court was then required to make a disposition of the custody of the CHINS, Ala. Code (1975), § 12-15-65 (e), in accordance with Ala. Code (1975), § 12-15-71 (c), the statute which governs such dispositions.
Section 12-15-71 (c) provides in pertinent part:
 "(c) If a child is found to be delinquent or in need of supervision, the court may make any of the following orders or dispositions for his supervision, care and rehabilitation:
 "(1) Permit the child to remain with his parents, guardian or other custodian, subject to such conditions and limitations as the court may prescribe;
 "(2) Place the child on probation under such conditions and limitations as the court may prescribe;
 "(3) Transfer legal custody to any of the following:
 "a. The department of youth services, with or without a commitment order to a specific institution;
 "b. In the case of a child in need of supervision, the department of youth services or the department of human resources;
 "c. A local, public or private agency, organization or facility willing and able to assume the education, care and maintenance of the child and which is licensed or otherwise authorized by law to receive and provide care for children;
 "d. A relative or other individual who, after study by the probation services, is found by the court to be qualified to receive and care for the child."
Under the statute no presumption is given that a CHINS should be placed in a natural parent's custody. In fact, no alternative contained in the statute for disposition of a CHINS has any priority over the other alternatives. The trial court may choose that alternative which it finds to be in the best interests of the CHINS. Cf. Anonymous v. Anonymous,504 So.2d 289 (Ala.Civ.App. 1986).
In this case the trial court chose alternative (3)d. under § 12-15-71 (c) by placing custody of the child with a relative, the child's half-brother and the latter's wife. The record contains evidence that such was in the child's best interests.
The evidence shows that the child's parents were divorced in 1980, at which time legal custody was given to the mother. After residing with his mother for approximately one year, the child moved in with his father. He continued to reside with his father until December 1985 when he returned to live with his mother.
At some point the mother remarried. It appears that the child's disputes with the mother's new husband, including physical altercations, led to the filing of the CHINS petition in this case. There was evidence that the child did not want to continue residing with his mother and stepfather. During the pendency of the final hearing in this case, the child resided at the Coosa Valley Youth Services Attention Center.
There was evidence that the father paid no child support after the child left his home in December 1985 and had had little, if any, contact with the child since that time.
The evidence indicated that the child had a good relationship with the Pollards, the child's half-brother and the latter's wife, and had visited in their home several weekends during his stay at the Attention Center. The testimony of the Pollards was that they desired for the child to reside with them permanently, and there was other evidence, including the testimony of the county juvenile probation officer, which indicated that placing custody of the child with the Pollards would be in the child's best interests. *Page 634 
In view of the above, we do not think the trial court erred under § 12-15-71 (c)(3)d. in placing custody of the child with the Pollards.
The father also contends, however, that the trial court erred in giving the Pollards custody of the child without having first required a formal study of their home. We disagree.
As already discussed above, Ala. Code (1975), § 12-15-71 (c)(3)d., gives the trial court the option of placing the CHINS in the custody of "[a] relative or other individual who, after study by the probation services, is found by the court to be qualified to receive and care for the child."
The record indicates that the county probation services did study the suitability of the Pollards for caring for the child. The testimony of the juvenile probation officer was that he had talked with the Pollards over the telephone and that he had discussed the Pollards with counselors at the Coosa Valley Youth Services Attention Center who had met with them when they came to the Center to pick up the child or return him from weekend visits. The reasonable implication of this testimony was that the juvenile probation officer had found the Pollards to be qualified to receive and care for the child, as required by § 12-15-71 (c)(3)d.
The father makes much of the fact that the juvenile probation officer did not visit the Pollards in their home and make a formal "home study."
While a formal home study would certainly be preferable in cases such as this one, the language of § 12-15-71 (c)(3)d. clearly does not require such a formal study. Rather, the general language of the statute only requires a study of an unspecified nature.
Although the language of the statute speaks only in general terms of the study of the relative or individual who is to receive custody of the CHINS, we cannot say that such language is unclear or ambiguous. Therefore, this court is not at liberty to construe that language so as to impose additional requirements not otherwise provided by the statute. SeeAdvertiser Co. v. Hobbie, 474 So.2d 93 (Ala. 1985).
In summary, we find no violation of Ala. Code (1975), § 12-15-71 (c)(3)d., or error by the trial court in placing custody of this CHINS in the child's half-brother and the half-brother's wife.
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.