A.R. and W.T. are the mother and father of E.D.R., a two-year-old child. The parents are not married, but the father has legitimated the child. When E.D.R. was 10 months old, the State Department of Human Resources (DHR) filed a dependency petition, alleging that the mother had neglected to provide necessary medical care for the child. After an emergency hearing, the juvenile court determined that the child was dependent, placed him with the maternal grandmother, and set the matter for a dispositional hearing.
At the dispositional hearing, the mother did not seek custody of the child. Both the father and the maternal grandmother stipulated that the child was dependent, and each of them sought custody. After an ore tenus proceeding, the juvenile court determined that the father was unfit to have custody of the child and awarded custody to the maternal grandmother.
The father appeals, arguing that the record does not support the trial court's finding that he is unfit. We agree.
The father is 25 years old and has 7 children by 4 different women. He has moved five times in the last two years. At the time of the dispositional hearing, he lived in a two-bedroom house with his wife and her four children, three of whom are his. In addition, he has four other children (one of whom is E.D.R.) by three other women (one of whom is A.R.). The father has been employed by a moving company for seven years and earns $5.50 per hour. He works approximately 70 hours per week in the summer and 20 hours per week in the winter. His wife has a *Page 649 
minimum-wage job at a fast-food restaurant. The father has three misdemeanor assault convictions, one of which involved domestic violence on his wife. He also has two prior convictions for public intoxication and one conviction for disorderly conduct.
The evidence was undisputed that the father loves and appropriately cares for the four children who live in his household. The evidence was also undisputed that the father had seen E.D.R. very infrequently during the time that the child was in the maternal grandmother's custody, in part because the father and the grandmother did not get along well and had difficulty arranging mutually convenient times for the father's visitation. The father's wife testified that she would welcome the child into her home. There was no testimony regarding the father's relationship with the three children he fathered by women other than A.R. or his wife.
The maternal grandmother is a college graduate, is retired from the Army, and does not work outside the home. She receives disability income as well as spousal support from her husband who is on active duty with the Army in Korea. She has a three-bedroom apartment that she shares with a daughter other than A.R., that daughter's child, and two of A.R.'s three children — E.D.R. and his older brother.
Valencia Curry, the DHR social worker who did a home study on both the father and the maternal grandmother, concluded that both homes were suitable for the child. However, she recommended to the court that the child be placed with the grandmother because the father had had "limited contact with" the child and because the child had "been placed with his grandmother and his brother the majority of his life and that's really the only people that he knows."
The evidence does not demonstrate that the father is unfit to have custody of E.D.R. The father is employed, his home was deemed suitable by a DHR social worker, and there was no proof of parental neglect. See J.F. v. A.G., 607 So.2d 234
(Ala.Civ.App. 1991). The juvenile court erred by determining that the father was unfit to have custody of E.D.R. That error was harmless, however, because a finding of the father's unfitness was not required in order for the trial court to have awarded custody to the grandmother.
All that was required was a finding that it was in the best interest of the child to be placed in the grandmother's custody.
The requirement that a trial court find parental unfitness before it deprives a parent of his or her prima facie right to custody applies to a custody dispute between a parent and a nonparent. See, e.g., Ex parte Terry, 494 So.2d 628 (Ala. 1986);Ex parte D.J., 645 So.2d 303 (Ala. 1994). In Terry, our supreme court held that in a custody dispute between a parent and a nonparent, the trial court may not award the child to the nonparent unless it finds, by clear and convincing evidence, that the parent is unfit. Later, in D.J., the court made it clear that the same parental presumption applies to a custodydispute between the father of a child born out of wedlock and a nonparent.
The parental presumption set out in cases such asTerry and D.J. does not apply, however, in the dispositional phase of a dependency proceeding under § 12-15-71(a), Ala. Code 1975. See, e.g., D.K.G. v. J.H., 627 So.2d 937
(Ala.Civ.App. 1993); N.M. v. State, 625 So.2d 448 (Ala.Civ.App. 1993);M.M. v. C.M., 600 So.2d 316, 318 (Ala.Civ.App. 1992); Wallacev. Pollard, 532 So.2d 632 (Ala.Civ.App. 1988); Jones v. Webb,524 So.2d 374, 374-75 (Ala.Civ.App. 1988); Minchew v. MobileCounty Dep't of Human Resources, 504 So.2d 310
(Ala.Civ.App. 1987); Martin v. State ex rel. Department ofHuman Resources, 502 So.2d 769 (Ala.Civ.App. 1987); Anonymousv. Anonymous, 504 So.2d 289, 291 (Ala.Civ.App. 1986), appeal dismissed sub nom. Brown v. Bailey, 484 U.S. 805, 108 S.Ct. 52,98 L.Ed.2d 16 (1987); Sanders v. Guthrie, 437 So.2d 1313
(Ala.Civ.App. 1983); Matter of Stacks, 406 So.2d 979
(Ala.Civ.App. 1981).
 "There is no requirement to find the parent unfit when dependency is found and temporary custody is placed with a relative to protect the welfare of the child."
C.P. v. M.K., 667 So.2d 1357, 1359 (Ala.Civ.App. 1994) (Thigpen, J., concurring specially in part and dissenting in part).
Neither Terry nor D.J. was a dependency case. Each of those cases was, as this court *Page 650 
said in Anonymous v. Anonymous, 504 So.2d at 291, "simply a custody dispute between parents and nonparents." Judge Holmes, writing for this court in Anonymous, recognized that a dependency case was something more than "simply a custody dispute." He stated:
 "Whether the parents are unfit or not would be a determination necessary for termination of their parental rights. See Ala. Code (1975), § 26-18-7. Such a determination, however, is not necessary in a case such as this one in which the juvenile court makes a disposition following a finding that the child is dependent, as well as in need of supervision. Moreover, this case is not simply a custody dispute between parents and nonparents. Thus, the parents' reliance upon Ex parte Terry, 494 So.2d 628 (Ala. 1986), is misplaced."
Anonymous v. Anonymous, 504 So.2d at 291.
On two other occasions, this court has explicitly recognized a distinction between dependency cases and custody disputes. Writing for this court in Jones v. Webb, Judge Ingram stated:
 "Our consideration of all the matters before us convinces us that this case comes here more in the shape of a change of custody case than a determination of dependency case."
Jones v. Webb, 524 So.2d at 374-75. In C.P. v. M.K., Presiding Judge Robertson wrote:
 "As in Jones, our review of the record evidence convinces us that this case is more of a custody case than a determination of dependency case."
C.P. v. M.K., 667 So.2d at 1358.
"When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code." C.P. v. M.K., 667 So.2d at 1360 (Thigpen, J., specially concurring in part and dissenting in part). Disposition in a dependency case is governed by § 12-15-71(a), Ala. Code 1975. That section provides, in pertinent part:
 "(a) If a child is found to be dependent, the court may make any of the following orders of disposition to protect the welfare of the child:
 "(1) Permit the child to remain with the child's parents, guardian, or other custodian, subject to conditions and limitations as the court may prescribe.
 "(2) Place the child under protective supervision as herein provided or under the supervision of the Department of Human Resources.
 "(3) Transfer legal custody to any of the following:
 "a. The Department of Human Resources; provided, that the department is equipped to care for the child.
 "b. A local public child-placing agency or private organization or facility willing and able to assume the education, care, and maintenance of the child and which is licensed by the Department of Human Resources or otherwise authorized by law to receive and provide care for the child.
 "c. A relative or other individual who, after study by the Department of Human Resources, is found by the court to be qualified to receive and care for the child.
 "(4) Make such other order as the court in its discretion shall deem to be for the welfare and best interest of the child."
In M.M. v. C.M., this court explained:
 "Once a child is found to be dependent, the trial court is authorized to make any of a number of dispositions under Ala. Code 1975, § 12-15-71, including transferring legal custody to an 'individual who, after study by the department of human resources, is found by the court to be qualified to receive and care for the child.' . . . It is not necessary that such an individual be a parent or even a relative of the child."
M.M. v. C.M., 600 So.2d at 318. "Under the statute, there exists no presumption that a CHINS [or a dependent child] should be placed in the natural parent's custody." N.M. v.State, 625 So.2d at 449; Wallace v. Pollard, 532 So.2d at 633. "To require a finding of a parent's unfitness, following a finding that the child is dependent, imposes a requirement outside the statutes and existing case law." C.P. v. M.K., 667 So.2d at 1359 *Page 651 
(Thigpen, J., specially concurring in part and dissenting in part).
The legislative intent underlying § 12-15-71 appears to be to give the juvenile court the broadest possible range of placement options in the dispositional phase of a dependency proceeding. We find no evidence that the legislature intended to accord a parent (even a noncustodial parent who may not have contributed to the child's becoming dependent) a presumption of fitness in the dispositional phase of a dependency case. The legislature is well aware of how to write a "parental preference" presumption into a statute. See, e.g., § 12-15-71(a)(6) ("There shall be a rebuttable presumption that children cannot be removed from custody of parents solely because of a need for emergency housing"); § 12-15-62(c) ("If a permanent plan is not presented [by DHR] to the court [within 18 months of an order placing a child in foster care] there shall be a rebuttable presumption that the child shall be returned to the family"). The legislature could have directed the juvenile court to place a dependent child with a nonparent only if it first found the parent or parents unfit. However, "no alternative contained in [§ 12-15-71] has any priority over the other alternatives. The trial court may choose that alternative which it finds to be in the best interests of the [dependent child]." Wallace v. Pollard, 532 So.2d at 633.
We cannot conclude that the legislature's failure to incorporate the Terry presumption into the statute providing for the disposition of dependent children was an oversight that may be remedied by the judicial branch. The express references to a parental preference presumption elsewhere in the statute "establish that the Legislature knew how to so limit or restrict the provisions of the statute if that was the intent."Dannelley v. State, 397 So.2d 555, 569 (Ala.Crim.App.), cert.denied, 397 So.2d 577 (Ala.), cert. denied, 454 U.S. 856,102 S.Ct. 305, 70 L.Ed.2d 151 (1981).
 "The terms '[rebuttable presumption]' and '[from the custody of their parents]' are clear as to what they describe. If the legislature had intended the [juvenile court in dependency proceedings to remove children from the custody of their parents only if it found the parents unfit], then it would have used the clear wording it used elsewhere."
McCullar v. Universal Underwriters Life Ins. Co.,687 So.2d 156, 174 (Ala. 1996) (Hooper, C.J., concurring in part and dissenting in part).
The standard to be used in the dispositional phase of a dependency proceeding is the "best interest" of the child. "The paramount considerations [in the dispositional phase of a dependency proceeding] are the welfare and best interests of the child. The relationship of a blood relative is subsidiary to such welfare." D.K.G. v. J.H., 627 So.2d at 938.
 "Section 12-15-71(a)(5) empowers the court which has found a child to be dependent to make such orders as the court in its discretion shall deem to be for the welfare and best interests of the child. This court has interpreted that power broadly to mean that its only parameter is the best interests and welfare of the child."
Minchew v. Mobile County Dep't of Human Resources, 504 So.2d at 311.
 "Ordinarily, a judgment of dependency and subsequent transfer of custody of a child as provided for in § 12-15-71, Code 1975 (1986 Repl.Vol.), are governed by the child's best interests, such as the child's age, sex, health, and any emotional, social, and material needs. See Jensen v. Short, 494 So.2d 90 (Ala.Civ.App. 1986). Both statute and case law seem clear that once dependency is determined, the trial court is authorized to make certain dispositions, including transferring the legal custody of a dependent child to a relative. Section 12-15-71, supra; Sanders v. Guthrie, 437 So.2d 1313 (Ala.Civ.App. 1983)."
Jones v. Webb, 524 So.2d at 374-75.
In M.M. v. C.M., the juvenile court declared a child dependent and awarded custody to the legal father. At trial, the mother claimed that the legal father was not the biological father and requested blood tests. On appeal, this court affirmed the trial court's denial of blood tests, holding that the paternity of a child is irrelevant to disposition *Page 652 
in a dependency case. We could not have reached that conclusion if a parental preference presumption had applied to the dispositional phase of a dependency proceeding. In M.M. v.C.M., we stated:
 "The mother insists that the issue of paternity is also central to the disposition of dependency proceedings. We do not agree. Once a child is found to be dependent, the trial court is authorized to make any of a number of dispositions under Ala. Code 1975, § 12-15-71, including transferring legal custody to an 'individual who, . . . is found by the court to be qualified.' Ala. Code 1975, § 12-15-71(a)(3)(c). It is not necessary that such an individual be a parent or even a relative of the child. See generally Ala. Code 1975, § 12-15-71."
M.M. v. C.M., 600 So.2d at 318 (emphasis added).
The case before us was not "simply a custody dispute between parents and nonparents." At the dispositional hearing, the father and grandmother stipulated, and the juvenile court determined, that E.D.R. remained dependent because his mother had failed to provide him with necessary medical care. See § 12-15-1(10)e., Ala. Code 1975. The record supports the conclusion that the court awarded custody of the child to his grandmother, in part, because of the child's continuing need for specialized medical care and the grandmother's ability, as a custodian who was not employed outside the home, to monitor closely the child's medical condition and transport him to a physician when necessary. The court's final order recites: "[S]aid child suffers from a medical condition requiring special medical assistance which this court does not believe that the father or stepmother can provide due to their work schedule."
From the evidence presented, the court could have concluded that placing the child with his grandmother would be in his best interest. That conclusion does not terminate the father's parental rights and it is not, of course, res judicata. SeeDale County Dep't of Pensions and Sec. v. Robles, 368 So.2d 39
(Ala.Civ.App. 1979). The father has visitation rights with the child and he can always petition for a modification of custody. Because the record supports the finding that it is currently in the best interest of the child to be placed in the custody of his maternal grandmother, the judgment of the juvenile court is affirmed.
AFFIRMED.
THOMPSON, J., concurs.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur in the result.