752 So.2d 499 (1999)
A.J.J.
v.
J.L. and R.L.
2980628.
Court of Civil Appeals of Alabama.
September 17, 1999.
Rehearing Denied November 5, 1999.
*500 Clark Hall, Gadsden, for appellant.
Dan Warnes, Guntersville, for appellees.
YATES, Judge.
R.L., a paternal aunt, and J.L., her husband, petitioned the Juvenile Court of Marshall County on October 7, 1997, for custody of J.R.M., born in June 1994. The aunt and uncle alleged that the child's mother, A.J.J., had a history of arrests, including an arrest and conviction for possession of controlled substances, for which she was on probation; a second arrest for possession of controlled substances and drug paraphernalia;[1] and an arrest and conviction for receiving stolen property; and they alleged that she had aided her husband in escaping from the Marshall County jail by driving him to Tennessee, although she later assisted law enforcement officials in his recapture. The aunt and uncle further alleged that the child had, since his birth, lived with them from time to time and that he had lived primarily with them since August 1996; that the mother would visit the child on a random basis and would not see or call the child for several weeks at a time; that they were unaware of where the mother was living and keeping the child during visitation; and that the mother was unstable and that her lifestyle presented a threat to the child. Finally, the aunt and uncle alleged that the child was dependent and "in immediate or threatened danger of physical and/or emotional harm in that the child has no other structured environment in which to reside other than the home provided by the petitioners."[2] The aunt and uncle also provided the court with the affidavit of S.H., the mother's cousin, which stated, in part:
"[The mother] has stayed with me at my residence ... from time to time when she does not have anywhere else to stay. She has boasted to me in the past about competing with another drug dealer to be the biggest drug dealer in Marshall County.
"On Thursday, October 2, 1997, [the mother] came to my residence with her son, [J.R.M.], to stay with me for a few days.... When [the mother] arrived at approximately 8:00 p.m., she was unwashed and unkempt. [The child] was dirty and needed a bath. He wet his pants so I provided him with some sweatpants from my daughter and washed his underwear. He was still not given a bath by his mother.
"Friday morning [the mother] changed [the child's] shirt and put the washed underpants on [the child] but still did not give him a bath, nor did she take one herself. On Friday evening I demanded that [the mother] give [the child] a bath because he was filthy.
". . . .
"To my knowledge, [the mother] did not bathe or wash her hair the entire *501 four days she was at my house. The only times she prepared any type of meals for [the child] were when specifically directed to do so by me.
"[The mother] commented to me that she was trying to figure out how to get [the child] to urinate in a cup so that [she] could use his urine to pass a drug screening test with regard to a job interview.
"I do not feel that [the mother] can provide proper care for [the child] based upon my past and present observations of her lack of concern for his [basic] needs and lack of supervision."
Following a hearing on the aunt and uncle's emergency petition for custody, the court, on October 15, 1997, entered an order finding that it would be in the best interests of the child that the aunt and uncle be granted temporary custody, because of the mother's unstable condition. The court also awarded the mother visitation rights.
A final hearing was held in the matter on December 1, 1998. The court, on January 26, 1999, entered an order finding that the child's best interests would be served by awarding custody of the child to the aunt and uncle. The mother appeals, following the denial of her postjudgment motion.
The court's order provides, in part:
"The child's natural father, [P.M.], has not been involved in raising the child and voluntarily waived his rights to appear; he consented to his sister [R.L.] having custody of the minor child.
"The mother, [A.J.J.], was convicted of possession of controlled substance on February 14, 1997, and was placed on probation.
"On April 20, 1997, the mother was again arrested for possession of controlled substanceCrystal Methamphetamineand possession of drug paraphernalia. She was indicted by a Marshall County Grand Jury on December 10, 1998. At the custody trial, she said she was not guilty to these charges.
"The mother was also involved in the escape of her husband ... from the custody of the Marshall County Jail work detail. She admitted to helping [him] escape and carrying him to the state of Tennessee. She later entered an `agreement' with the state of Alabama to take Alabama law enforcement officers to Tennessee to capture [him]. The `agreement,' according to detective Harvey Moore, granted the mother relief from prosecution for cooperating in the capture of [her husband].
"At the December 1, 1998, hearing, the mother stated that she had filed for divorce....
"Between the hearing of October 14, 1997, and that of December 1, 1998, the mother moved in with her parents ... who provided support for her. Her parents provided a place to live and an automobile. This arrangement continued through December 1, 1998.
"The [mother] has two other childrena daughter and a son. [The daughter] has lived with the maternal grandparents since March 1996. [The son] lives with his paternal grandmother [and] was placed with [her] in October 1997. These placements were made by agreement with the mother.
"[J.R.M.] has now lived with [R.L. and J.L.] most of his young life. When the child has lived with his mother, there has been no long-term stability other than that given by a relative.
"The mother again faces possible imprisonment due to the new felony drug charges and possible probation revocation on the previous felony conviction.
"The only long-term stable future that seems certain for the child would be living with [R.L. and J.L.]. [They] are self-employed, operating a farm and country store. [R.L. and J.L.] are dedicated to the care and support of the minor child. [R.L and J.L.] are active in *502 church and take [the child] with them at every opportunity.
"The mother now claims that she is changed and off drugs. The mother now claims that she will be stable. The mother lives with her parents and the parents furnish her an automobile. The probation officer for the mother states that she has now become a `model' probationer and passed her most recent drug screens. The mother now attends church on a regular basis.
"The Guardian Ad Litem for the child recommends that custody of [the child] be placed with [R.L. and J.L.].
". . . .
"Based on the history of this case the prior conduct of the mother, the felony conviction of the mother, and now pending new felony charges, the Court believes that the mother is unstable and likely to be imprisoned for a lengthy sentence. The mother is not stable at this time, faces possible imprisonment, has neglected the child for long periods of time in the past, [and] the Court feels that the long-term best interest of this child requires that he be placed in the custody of his paternal aunt and uncle, [R.L. and J.L.]."
We note the well-settled rule that matters regarding child custody rest soundly within the discretion of the trial court and that judgments regarding those matters will not be disturbed on appeal absent an abuse of that discretion. Watson v. Watson, 634 So.2d 589 (Ala.Civ.App. 1994). Further, when evidence is presented to the court ore tenus, the court's judgment based on that evidence is presumed correct and will not be disturbed unless it is so unsupported by the evidence as to be plainly and palpably wrong. S.C.S. v. S.W.S., 707 So.2d 278 (Ala.Civ.App.1997). The mother argues on appeal that the court erred in applying the "best-interests-of-the child standard" in awarding the aunt and uncle custody of the child. The mother seems to rely upon the "tender-years doctrine" to argue that she is presumed to be the proper person to have custody of the child and that she cannot be denied custody absent a finding that she is unfit or that she has voluntarily relinquished custody. Our supreme court abolished the tender-years doctrine in Ex parte Devine, 398 So.2d 686 (Ala.1981). However, in Ex parte Terry, 494 So.2d 628 (Ala.1986), our supreme court recognized a presumption in favor of natural parents over nonparents in custody disputes. Our supreme court held in Terry that in a custody dispute between a parent and a nonparent, the court may not award custody of the child to the nonparent without first finding, by clear and convincing evidence, that the parent is unfit. Id. This presumption may be defeated if the parent voluntarily forfeits custody of the child to the nonparent. Roden v. Colburn, 522 So.2d 290 (Ala.Civ. App.1988).
This court stated in O.L.D. v. J.C., [Ms. 2970982, February 26, 1999] ___ So.2d ___, ___ (Ala.Civ.App.1999):
"`"When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code.'" W.T. v. State Dep't of Human Resources, 707 So.2d 647, 650 (Ala.Civ. App.1997), quoting C.P. v. M.K., 667 So.2d 1357, 1360 (Ala.Civ.App.1994) (Thigpen, J., specially concurring in part and dissenting in part). Upon finding a child to be `dependent,' the court may make any order of disposition necessary to protect the welfare of the child, including transferring legal custody of the child to a relative. § 12-15-71(a)(3)c., Ala.Code 1975; Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). This court, held in W.T. that the parental presumption set forth in Ex parte Terry and Ex parte D.J.[, 645 So.2d 303 (Ala.1994)] is not applicable in the dispositional phase of a dependency proceeding under § 12-15-71(a). W.T., supra. The appropriate standard to be applied in the dispositional phase of a dependency proceeding is the `best interests of the child' standard. *503 Id., See also Jones, supra, and D.K.G. v. J.H., 627 So.2d 937 (Ala.Civ.App.1993). Further, there is no requirement that the court find a parent unfit when dependency is found and custody is placed with a relative to protect the welfare of the child. W.T., supra."
The aunt and uncle specifically alleged in their petition that the child was dependent and that he was in immediate or threatened danger of physical and emotional harm because he had no structured environment in which to reside. The evidence would support a finding that the mother has neglected the child; has failed to support the child; has failed to provide adequate housing and a stable environment in which to raise the child; has, except for intermittent visitation, abandoned the child to the care of the aunt and uncle for extended periods while she pursued a lifestyle free of responsibility; and that she has had several drug arrests and convictions, the latest of which resulted in her being indicted by the Marshall County Grand Jury. The mother is likely to be incarcerated as a result of the latest charges and indictment. After consideration of the facts and circumstances of this case, as well as the record evidence, we conclude that this case is not simply a custody dispute between a parent and nonparent, but, rather, is a dependency case; therefore, Terry is not applicable.
Further, we note that in its order the court failed to make a finding of dependency regarding the child. When making a determination as to whether a child is dependent, the court may take into consideration the totality of the circumstances. H.A. v. Limestone County Dep't of Human Resources, 628 So.2d 948 (Ala. Civ.App.1993). In the interest of judicial economy, and because the record evidence in this case supports a finding of dependency pursuant to § 12-15-1(10), Ala.Code 1975, we will not remand this case for the trial court to make a finding of dependency regarding the child. Id. Suffice it to say that a review of the totality of the circumstances of this case supports a finding of dependency.
Because this is a dependency case, we need determine only whether putting custody of the child in the aunt and uncle was in the best interests of the child. O.L.D., supra. After carefully reviewing the record, we conclude that the trial court's determination that the best interests of the child would be served by awarding custody to the aunt and uncle is supported by the evidence. The mother has two other children that she has failed to provide for and that she has left for other relatives to rear. The mother has a history of drug-related arrests and convictions. She testified that since the hearing in October 1997 she has been determined to change her life. The mother has resided with her parents since that time and they have provided support for her. The evidence indicates that during this time the mother has had regular visitation with the child. We note, however, that as a result of the mother's latest drug-related arrest she has been indicted and faces a revocation of her probation and a possible lengthy prison sentence.
The aunt and uncle have cared for the child for most of his life. The aunt and uncle are financially capable of caring for him and have received no support from his mother while he has lived with them. The evidence suggests that the aunt and uncle love the child and are capable of taking care of his needs. We cannot say that the trial court abused its discretion in awarding custody of the child to the aunt and uncle. Accordingly, the court's judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.
NOTES
[1] This case was still pending at the time of the final hearing. The mother was subsequently indicted on these charges on December 10, 1998.
[2] The child's father, P.M., who is R.L.'s brother, consented to the custody petition filed by R.L. and J.L.