915 So.2d 64 (2005)
W.T.H.
v.
M.M.M.
No. 2040147.
Court of Civil Appeals of Alabama.
June 10, 2005.
*66 Melvin Hasting, Cullman, for appellant.
Joseph D. Steadman of Dodson & Steadman, P.C., Mobile; and Michael D. Sherman of Sherman & Jeffries, L.L.C., Mobile, for appellee.
*65 CRAWLEY, Presiding Judge.
W.T.H. ("the father") appeals from a judgment of the Mobile Juvenile Court determining that his two minor children, 15-year-old L.H. and 13-year-old M.H., are dependent and placing them in the custody of M.M.M. ("the maternal grandmother").
The father and M.E.H., the children's mother, separated in 1997 and were divorced in 1999. The parents were awarded joint legal custody of their three children, the oldest of whom, J.H., is now an adult. The mother was awarded sole physical custody of the children; the father was awarded standard visitation and ordered to pay child support in the amount of $438 per month. During the marriage, the family lived in Cullman. When the parents separated, the mother moved with the children to Mobile and lived with the maternal grandmother. Before the separation and divorce, the mother had been diagnosed with an incurable brain disease. Her condition deteriorated over the next seven years and, during that time, the maternal grandmother cared for the children and the mother.
In May 2003, the father filed in the Cullman Circuit Court a petition to modify his child-support obligation. Upon motion of the mother, venue was changed to the Mobile Circuit Court. In September 2003, *67 the mother answered the father's petition and counterclaimed, seeking to have the father held in contempt for a child-support arrearage. The father failed to appear on the date set for trial, and, on October 2, 2003, the Mobile Circuit Court dismissed the father's petition and entered a default judgment in favor of the mother on her counterclaim, holding the father in contempt and ordering him committed to the county jail until he purged himself by paying $15,285.29. The circuit court also modified the visitation provisions of the divorce judgment, requiring that the father's visits with the children be supervised.
The mother died on July 16, 2004. Three days later, the father attended the mother's funeral in Mobile. After the funeral, he took the two minor children back to Cullman with him. On July 22, 2004, the maternal grandmother filed in the Mobile Juvenile Court a "Petition for Custody," alleging that the children were dependent within the meaning of § 12-15-1(10), Ala.Code 1975; an "Instanter Petition for Custody and Immediate Return of the Children"; and an affidavit, averring, in pertinent part, the following:
"[The father] took the two minor children under false pretense, sending me a message through their nineteen-year-old brother that he [the father] was taking them to lunch. I was later contacted by the children and told that their father had taken them to Cullman and [was] not returning them to Mobile. My grandchildren have called me on three or four occasions each day since their removal, most often in tears, wanting to return to Mobile. The stress of their mother's death has been compounded by [the father's] removal of them from their home.
"Due to [the father's] extensive history of [convictions for driving under the influence] and his history regarding the care of the children in the past, I am very worried about the children's health and welfare, and I am of the opinion that they are in an immediate threat of danger if they remain in their father's physical custody."
In an ex parte order rendered on July 22, 2004, the Mobile Juvenile Court granted the maternal grandmother's instanter petition and ordered the children returned to the maternal grandmother. The juvenile court set the custody petition for a hearing on September 29, 2004.
On July 28, 2004, the father moved the Mobile Circuit Court to vacate the judgment holding him in contempt, assessing a child-support arrearage, and ordering him incarcerated. On the same date, the father moved the Mobile Juvenile Court to dismiss the maternal grandmother's petitions and to set aside its July 22 order. The father asserted the following grounds: (1) that the petitions were not properly verified by an intake officer as required by § 12-15-50, Ala.Code 1975, and Rule 12, Ala. R. Juv. P.; (2) that the petitions failed to set forth with specificity the basis for bringing the children within the juvenile court's dependency jurisdiction, pursuant to § 12-15-52(c), Ala.Code 1975; (3) that the juvenile court failed to direct the issuance of the petitions and summonses to the children, who were over the age of 12 years, as mandated by § 12-15-53, Ala.Code 1975; (4) that the juvenile court did not have subject-matter jurisdiction to modify the child-custody provision of the judgment divorcing the children's parents; and (5) that the proper venue was Cullman County rather than Mobile County.
The Mobile Juvenile Court indicated that it would hear the father's motion to dismiss on September 29, 2004, when it tried the issue of custody. At the beginning of the trial on September 29, the juvenile court announced that it would reserve *68 ruling on the father's motion to dismiss until after it had taken testimony.
At trial, the father acknowledged that he was an alcoholic. He testified that in the 10-year period from 1991 to 2001, he had been convicted 7 times for driving under the influence ("DUI") and once for public intoxication. For his most recent DUI conviction in February 2001, he had been sentenced to a 15-month term of imprisonment. He completed an eight-week substance-abuse program in prison and was then released on parole. The father testified that it was a condition of his parole not to drink alcohol. He stated that he had abided by that condition and had had nothing to drink before January 3, 2003, the date his parole was over. The father asserted that, with the exception of one relapse within a month of the completion of his parole, he had had nothing to drink for "over a year." When questioned as to the last time he had indulged in alcohol, the father testified, "I'm not sure exactly what that date might be. I know in AA [Alcoholics Anonymous] they do put emphasis on a sobriety date. But I had set so many and failed . . . that I quit doing that." The father stated that since his parole completion date he had neither attended Alcoholics Anonymous ("AA") meetings nor met with a sponsor. He testified that as a consequence of his DUI convictions, he had no driver's license and did not drive. He explained that he would not be eligible to obtain a driver's license until 2008. In the meantime, he said, relatives and friends provided him with transportation.
The father testified that he had had a number of minimum-wage jobs since the divorce. He explained that he had paid his child support until he was incarcerated, and, he said, he had no arrearage until that time. The father acknowledged that, immediately upon taking the children to Cullman after the mother's funeral, he filed a motion with the Mobile Circuit Court to terminate his child-support obligation and filed an application with the Social Security Administration to have the children's Social Security benefits paid to him. He admitted that he had later received one Social Security check in the amount of $734 that he did not remit to the maternal grandmother.
The father testified that he would consider it improper to have an unrelated guest of the opposite sex spend the night with him when the children were present in the house. He assured the court that he would not indulge in such behavior unless he were married, and, he stated, he had no plans to marry.
The minor children testified in camera. Both said that they had seen the father drinking beer during their two-week visitation with him in the summer of 2004. In addition, they testified that, during the same time period, they had seen beer in the father's refrigerator and had smelled alcohol on his breath. The daughter testified that, on one occasion, she felt "in danger" when the father "grabbed [her] wrist while [they] were playing [and she thought the father] was drunk." Both children said that the father regularly drove a car during their summer visitation with him and during the time that they were in Cullman with him after the mother's funeral. Both children also testified that the father and a woman named "Wanda," whom the father referred to as his girlfriend, had spent the night in the same bedroom during the time they were in Cullman after the mother's funeral. Each child expressed a preference for remaining in Mobile with the maternal grandmother.
The maternal grandmother testified that she is 67 years old and is employed at a Dillard's department store in Mobile. Her average income from that employment is *69 $1,200 to $1,500 per month. She also receives $1,175 per month from the Veterans Administration as a consequence of her late husband's disability and $1,100 per month in Social Security benefits for the children. In addition, her 39-year-old daughter lives in the household and pays rent of $150 per month. The maternal grandmother takes six different prescription medications for hypertension, diabetes, and a heart condition. She testified that, during the father's marriage to the mother, the father was often drunk and abusive to the mother. She said that after the father's release from prison, she had seen him staggering drunk in her driveway. On that occasion, she said, the father slept in the older son's vehicle, which was parked in her driveway; in the backseat of the vehicle the maternal grandmother saw 10 cans of beer in a briefcase that she recognized as the father's.
The maternal grandmother testified that she was asking for custody of the children because they had been with her for eight years, they liked their schools and friends in Mobile, and their lives were "stabilized," in contrast, she said, to the father, whose life was unstable. She stated that the father had "jumped from one job to the other" and had "not paid his child support as he should have." The maternal grandmother conceded that she "despised" the father, but she said she would have no objection to his having custody of the children if she were convinced that he had "straightened his life up." However, she said that she saw no indication that he had made a "turnabout change" since his release from prison.
On October 4, 2004, the juvenile court entered a judgment determining that the children were dependent and that placing them in the custody of the maternal grandmother would be in their best interests. The judgment provides that the father will have visitation with the children one weekend per month, one week at Christmas and spring break, and one month during the summer. The father's visitation was conditioned upon his not being in possession of any alcoholic beverage while the children were with him and not driving without a valid driver's license. The visitation was subject to the further conditions that the father use the children's paternal grandmother's residence as his residence when the children visit, that the paternal grandmother or other appropriate supervisory adult accompany the father and children on any overnight outings, and that neither the father nor the paternal grandmother have an unrelated person of the opposite sex spend the night in their home when the children are present.
On appeal, the father raises, among other contentions, the same issues he raised in his motion to dismiss the maternal grandmother's dependency petition.

I.
The father contends that the juvenile court did not have subject-matter jurisdiction to modify the child-custody provision of the judgment divorcing the children's parents. He also argues that the juvenile court erred by using a "best interest" standard in awarding custody of the children to the maternal grandmother because, he asserts, he was entitled to the parental presumption described in Ex parte Terry, 494 So.2d 628 (Ala.1986)  a presumption that afforded him the right to custody of the children unless the trial court found him unfit.
In 1999, the Cullman Circuit Court divorced the children's parents and determined the issue of child custody. The circuit court thereby acquired subject-matter jurisdiction over issues regarding the children's custody and retained that jurisdiction until the children reach the age of *70 majority, subject to the exception found in § 12-15-30(a), Ala.Code 1975, which provides that the juvenile court "shall exercise exclusive original jurisdiction of proceedings in which a child is alleged to be . . . dependent."
In W.T. v. State Department of Human Resources, 707 So.2d 647 (Ala.Civ.App.1997), this court explained the distinction between a custody dispute involving a parent and a nonparent, for which the Ex parte Terry "unfitness" standard applies, and a dependency proceeding in which a "best interest" standard[1] applies:
"The requirement that a trial court find parental unfitness before it deprives a parent of his or her prima facie right to custody applies to a custody dispute between a parent and a nonparent. See, e.g., Ex parte Terry, 494 So.2d 628 (Ala.1986); Ex parte D.J., 645 So.2d 303 (Ala.1994). In Terry, our supreme court held that in a custody dispute between a parent and a nonparent, the trial court may not award the child to the nonparent unless it finds, by clear and convincing evidence, that the parent is unfit. Later, in D.J., the court made it clear that the same parental presumption applies to a custody dispute between the father of a child born out of wedlock and a nonparent.
"The parental presumption set out in cases such as Terry and D.J. does not apply, however, in the dispositional phase of a dependency proceeding under § 12-15-71(a), Ala.Code 1975. See, e.g., D.K.G. v. J.H., 627 So.2d 937 (Ala.Civ.App.1993); N.M. v. State, 625 So.2d 448 (Ala.Civ.App.1993); M.M. v. C.M., 600 So.2d 316, 318 (Ala.Civ.App.1992); Wallace v. Pollard, 532 So.2d 632 (Ala.Civ.App.1988); Jones v. Webb, 524 So.2d 374, 374-75 (Ala.Civ.App.1988); Minchew v. Mobile County Department of Human Resources, 504 So.2d 310 (Ala.Civ.App.1987); Martin v. State ex rel. Department of Human Resources, 502 So.2d 769 (Ala.Civ.App.1987); Anonymous v. Anonymous, 504 So.2d 289, 291 (Ala.Civ.App.1986), appeal dismissed sub nom. Brown v. Bailey, 484 U.S. 805, 108 S.Ct. 52, 98 L.Ed.2d 16 (1987); Sanders v. Guthrie, 437 So.2d 1313 (Ala.Civ.App.1983); Matter of Stacks, 406 So.2d 979 (Ala.Civ.App.1981).
"`There is no requirement to find the parent unfit when dependency is found and temporary custody is placed with a relative to protect the welfare of the child.'
"C.P. v. M.K., 667 So.2d 1357, 1359 (Ala.Civ.App.1994)(Thigpen, J., concurring specially in part and dissenting in part).
"Neither Terry nor D.J. was a dependency case. Each of those cases was, as this court said in Anonymous v. Anonymous, 504 So.2d [289,] at 291 [(Ala.Civ.App.1986)], `simply a custody dispute between parents and nonparents.' Judge Holmes, writing for this *71 court in Anonymous, recognized that a dependency case was something more than `simply a custody dispute.' He stated:
"`Whether the parents are unfit or not would be a determination necessary for termination of their parental rights. See Ala.Code (1975), § 26-18-7. Such a determination, however, is not necessary in a case such as this one in which the juvenile court makes a disposition following a finding that the child is dependent, as well as in need of supervision. Moreover, this case is not simply a custody dispute between parents and nonparents. Thus, the parents' reliance upon Ex parte Terry, 494 So.2d 628 (Ala.1986), is misplaced.'
"Anonymous v. Anonymous, 504 So.2d at 291."
W.T., 707 So.2d at 649-50. In making a custodial disposition of a child who is found to be dependent, the trial court may "`choose that alternative which it finds to be in the best interests of the [dependent child].'" Id. at 651 (quoting Wallace v. Pollard, 532 So.2d 632, 633 (Ala.Civ.App.1988)). See § 12-15-71(a)(4), Ala.Code 1975.

II.
The father claims that the maternal grandmother's petitions were not properly verified by an intake officer as required by § 12-15-50, Ala.Code 1975, and Rule 12, Ala. R. Juv. P. Section 12-15-50 provides:
"Cases before the [juvenile] court shall be initiated by the filing of a petition by the intake officer who shall receive verified complaints and proceed thereon pursuant to rules of procedure adopted by the Supreme Court."
Section 12-15-52(a), Ala.Code 1975, provides that "[a] petition may be signed by any person who has knowledge of the facts alleged or is informed of them and believes that they are true." Rule 12, Ala. R. Juv. P., states, in pertinent part:
"(A) Any person or agency having knowledge of the facts may make a complaint to the intake office; the complaint shall allege facts sufficient to establish the jurisdiction of the court and the child's delinquency, dependency, or need of supervision. A complaint is made when it is filed with the intake office, which shall immediately note thereon the date and time of filing.
"(B) When a complaint is made, the intake office shall conduct a preliminary inquiry to determine whether the child is within the jurisdiction of the court and whether the best interests of the child or of the public require that a petition be filed.
"(C) If it appears from the preliminary inquiry that the child is within the jurisdiction of the court, the intake office shall either:
"(1) Utilize the informal adjustment process provided by Rule 15; or
"(2) File a petition if judicial action appears necessary."
The record reflects that the maternal grandmother's petitions and supporting affidavit were verified by being "sworn to and subscribed" before a notary public. They were not, however, "signed" or "filed" by an intake officer. In Ex parte Johnson, 474 So.2d 715 (Ala.1985), the Alabama Supreme Court held that any interested party may sign and file a dependency petition in juvenile court. See also S.D. v. State, 602 So.2d 1206 (Ala.Crim.App.1991), affirmed, 602 So.2d 1209 (Ala.1992)(holding that a petition in a juvenile-delinquency case need not be signed and filed by the intake officer in order to give the juvenile court subject-matter jurisdiction over the petition). The record *72 also reflects that the maternal grandmother's petitions and supporting affidavit were delivered to the clerk of the court and stamped "filed" on July 22, 2004, at 11:38 a.m. "`Generally, a pleading is deemed filed when it is delivered to, and received by, the proper officer for the purpose of filing.'" S.D. v. State, 602 So.2d at 1209 (quoting J.M. v. State, 518 So.2d 819, 821 (Ala.Crim.App.1987)). We conclude that the father has demonstrated no procedural irregularity in the filing of the petitions.

III.
The father argues that the maternal grandmother's petitions failed to set forth with specificity the basis for bringing the children within the juvenile court's dependency jurisdiction, pursuant to § 12-15-52(c), Ala.Code 1975. The following portions of the maternal grandmother's dependency petition adequately set forth a basis for the exercise of the juvenile court's dependency jurisdiction:
"On July 19, 2004, at the mother's funeral, the father appeared and told the [maternal grandmother] that he wanted to take the children to lunch. He then secretly took them to Cullman, Alabama where he resides.
"The children have called the [maternal grandmother] multiple times each day since their removal crying and wanting to return to their home in Mobile, Alabama.
"Based on information and belief, the father is a habitual abuser of alcohol and has been arrested for DUI on more than five occasions, most recently serving in excess on one year in jail for a DUI offense.
"Based on information and belief, the father does not have a valid driver's license.
"[The maternal grandmother] fears for the children's safety and well-being while in the care of the father."
The foregoing assertions implicate subsections b., c., d., f., g., j., and k. of § 12-15-1(10), Ala.Code 1975, defining a "dependent child," and adequately trigger the juvenile court's jurisdiction "[c]oncerning any child[] [w]ho . . . is in clear and present danger of suffering lasting or permanent damage," see § 12-15-30(c)(1)a., Ala.Code 1975.

IV.
The father asserts that the juvenile court erred by failing to direct the issuance of the petitions and summonses to the children, who were over the age of 12 years, as mandated by § 12-15-53, Ala.Code 1975. Section 12-15-53(a) provides:
"After a petition alleging . . . dependency has been filed, the court shall direct the issuance of summonses, one to be directed to the child if the child is 12 or more years of age, . . . requiring them to appear personally before the court at the time fixed to answer or testify as to the allegations of the petition."
Section 12-15-53(e) provides:
"A party, other than the child, may waive service of summons by written stipulation or by voluntary appearance at the hearing."
Lack of personal jurisdiction, insufficiency of process, or insufficiency of service of process are personal defenses that must be raised in a responsive pleading or by motion under Rule 12(b), Ala. R. Civ. P. No objection on this ground was raised by the children's guardian ad litem and the father is not the proper party to raise this issue. "As a general rule, `a litigant may not claim standing to assert the rights of a third party.'" Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990)(holding that a father *73 lacked standing to assert the right of custodial relatives in Nigeria to notice of a custody proceeding in Alabama)(quoting Jersey Shore Med. Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 144, 417 A.2d 1003, 1006 (1980)).

V.
In his motion to dismiss the maternal grandmother's petitions, the father made the following allegation concerning venue:
"[The Mobile Juvenile Court] was [an] improper venue for this petition as the Circuit Court of Cullman County has already obtained jurisdiction of the above named minors in a divorce decree dated March 3, 1999 and that said Circuit Court retains jurisdiction to the exclusion of the Juvenile Court unless divested of jurisdiction by statutory grounds and the petition filed by the grandmother fails to state any statutory ground to vest jurisdiction in [the Mobile Juvenile Court]."
Although couched in terms of a "venue" argument, the foregoing allegation is actually a repeat of the father's subject-matter-jurisdiction argument. The father did not request a transfer of the action from the juvenile court of Mobile County to the juvenile court of Cullman County pursuant to § 12-15-35(b), Ala.Code 1975. That section provides:
"If dependency is alleged, proceedings shall be commenced in the district where the child resides or in the district where the child is present when the proceedings are commenced."
Instead, the father insisted that the circuit court was the proper tribunal in which to try the issue of his parental fitness. We have previously answered that argument in Part I of this opinion. Because the father makes no argument and cites no authority for the proposition that the Cullman Juvenile Court rather than the Mobile Juvenile Court was the correct venue for the maternal grandmother's dependency petition, he has waived appellate review of this issue. See Rule 28(a)(10), Ala. R. Civ. P. See also Ex parte Sumner, 451 So.2d 308 (Ala.Civ.App.1984).

VI.
The father maintains that the juvenile court erred by setting a hearing on the merits of the dependency petition almost 10 weeks after the ex parte order granting emergency custody to the maternal grandmother. He cites no authority in support of his argument, however, and he has, therefore, waived appellate review of this issue. See Rule 28(a)(10), Ala. R.App. P.

VII.
The father claims that the juvenile court erred by deferring a ruling on his motion to dismiss until after the presentation of evidence at trial. We agree; however, because we have determined that the motion to dismiss does not state grounds mandating a reversal of the juvenile court's judgment, we conclude that deferring a ruling on the motion was harmless error. See Rule 45, Ala. R.App. P.

VIII.
The father complains that the evidence did not support the juvenile court's finding that he is unfit as a parent, that the children are dependent, and that the children's best interests would be served by placing them in the custody of their maternal grandmother. As we have previously discussed in Part I of this opinion, there was no requirement that the juvenile court find the father unfit in order to place the children with the maternal grandmother. We hold that the maternal grandmother presented clear and convincing evidence *74 from which the juvenile court could have determined that the children were dependent and that it was in their best interest to reside with the maternal grandmother.
The evidence was undisputed that, in a 10-year period, the father had a public-intoxication conviction and 7 DUI convictions, the most recent of which had resulted in a 15-month term of imprisonment for which the father's parole had ended approximately 20 months before the trial of this case. The father acknowledged without hesitation that he is an alcoholic, yet he admitted that, since his release from prison, he had not participated in an AA program or sought a sponsor and that, within a month of his parole, he had "relapsed." The father stated that he had been sober for over a year, yet both children testified that during their summer 2004 visitation with the father, only four months before the trial of this case, they had seen beer in his refrigerator, had seen him drinking beer, and had smelled alcohol on his breath. The daughter testified that she thought he was drunk on one occasion during that same time period. The children's testimony, if believed by the juvenile court, would authorize a finding that the father is an alcoholic who, after satisfying the conditions of his parole, has made no effort to overcome his addiction or to reform his life.
The evidence was undisputed that the father has no driver's license and will not be eligible to apply for a driver's license until 2008, yet the children's testimony, if believed by the trial court, would authorize a finding that the father wilfully and routinely ignores the prohibition against his driving a vehicle. More importantly, for purposes of assessing the children's safety, the trial court could have found that, even after 7 DUI convictions and a lengthy term of imprisonment, the father refuses either to stop drinking or to stop driving, even when his children are with him.
The evidence was also undisputed that the children are happy and well-adjusted to living with the maternal grandmother and that she has provided them with a safe and loving home. The juvenile court's judgment is due to be affirmed.
The maternal grandmother's request for an attorney fee on appeal is denied.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK J., concurs in the result, with writing.
BRYAN, J., concurs in the result, with writing, which MURDOCK, J., joins.
MURDOCK, Judge, concurring in the result.
I cannot agree with some portions of the analysis in the main opinion. Nonetheless, I agree with the result reached in the main opinion, and I join Judge Bryan's special writing explaining why he too concurs in the result.
I write separately to note my concern as to statements by this court in some cases that can be read as suggesting that a child may be found dependent and the custody of the child may be removed from its parent merely because the State, through its judicial branch, makes a determination that the child's "best interests" would be served by being in the physical custody of someone other than his or her parent. Such statements are found in the main opinion immediately before the quotation from W.T. v. State Department of Human Resources, 707 So.2d 647 (Ala.Civ.App.1997), in Part I and in Part VIII. See 915 So.2d at 69-72 and 73-74. But see note 1 of the main opinion, id. Even Judge Holmes's statement in Anonymous v. *75 Anonymous, 504 So.2d 289 (Ala.Civ.App.1986), as quoted in note 1 in the main opinion, holds as much potential to mislead as to correctly exposit.
While the parental-custodial presumption has been held not to apply in the dispositional phase of a dependency case (see, e.g., D.M.P. v. State Dep't of Human Res., 871 So.2d 77 (Ala.Civ.App.2003) (plurality opinion)), both on federal constitutional grounds and under general principles of state law that correlate with constitutional principles, there is very much a presumption in favor of parental custody that the State (or an individual petitioner) must overcome in the adjudicatory phase of a dependency case. What I believe to be the correct view of the constitutional rights of parents to the custody of their children, the correlative presumption as a matter of general state law in favor of parental custody, and how our custody cases and our dependency statutes and cases are fully consistent with these constitutional and state-law principles, is explained in my special writing in F.G.W. v. S.W., 911 So.2d 1, 5 (Ala.Civ.App.2004) (Murdock, J., dissenting) (discussing, among other things, the Alabama Juvenile Justice Act, § 12-15-1 et seq., Ala.Code 1975; Ex parte Terry, 494 So.2d 628 (Ala.1986); and W.T., supra).
I also note my disagreement with the statement in W.T., as quoted in the main opinion, see 915 So.2d at 70-71 (quoting W.T., 707 So.2d at 649), that unfitness is the only reason a court can favor a nonparent over a parent in a custody dispute. See F.G.W., supra (Murdock, J., dissenting) (referencing grounds upon which a nonparent may be favored over a parent).
BRYAN, Judge, concurring in the result.
In my opinion, the juvenile court specifically found, based on evidence received ore tenus, that the two children were dependent. Indeed, the court's judgment states that the two children "are dependent children as that term is defined in the Code of Alabama, in that the children's mother is deceased and the father, as a result of his alcohol abuse and failure to receive appropriate rehabilitation for same, is unable to discharge his responsibilities to and for the children at this time." As Judge Murdock stated in his dissent in F.G.W. v. S.W., 911 So.2d 1, 8 (Ala.Civ.App.2004), "[i]n order to adjudicate a child dependent, a trial court must determine that one or more of the delineated standards imposed by § 12-15-1(10), which define dependency, is satisfied." I am convinced that the juvenile court, by finding "from clear and convincing evidence," § 12-15-65(f), Ala.Code 1975, that the children were dependent because the children's mother is deceased and the father is unable to take care of the children due to his alcohol abuse and his failure to stop that abuse, found facts satisfying the definition of dependency in § 12-15-1(10)k. (defining a dependent child as a child whose parents, guardians, or other custodians "are unable to discharge their responsibilities to and for the child"). Therefore, the juvenile court did not err in finding the children dependent in the adjudicatory phase of the proceeding.
The judgment indicates that the juvenile court then applied the best-interests standard in the dispositional phase of the proceeding.[2] The juvenile court found that "it would be in the best interests of the children *76 that custody be awarded to the maternal grandmother, the petitioner." (Emphasis added.) That was the correct standard to apply in the dispositional phase. Therefore, I concur in the result.
MURDOCK, J., concurs.
NOTES
[1] As Judge Murdock's special writing correctly points out, the "best interests" standard applies only at the dispositional phase of a dependency proceeding. At the adjudicatory phase, the standard is clear and convincing proof that the child is dependent. See § 12-15-65(f), Ala.Code 1975. Statements by this court that parental unfitness need not be shown at a dependency proceeding go back at least as far as 1986, when, in Anonymous v. Anonymous, 504 So.2d 289, 291 (Ala.Civ.App.1986), Judge Holmes, writing for this court, stated:

"Whether the parents are unfit or not would be a determination necessary for termination of their parental rights. See Ala.Code (1975), § 26-18-7. Such a determination, however, is not necessary in a case such as this one in which the juvenile court makes a disposition following a finding that the child is dependent. . . ."
[2] Although the father was entitled to a rebuttable presumption that it was in the best interest of the children for them to be in his custody, the maternal grandmother rebutted that presumption with clear and convincing evidence indicating that the father could not discharge his responsibilities to and for the children.