RUSSELL, Judge.
This is a child custody modification case.
The parties were divorced in September 1988. The trial court awarded custody of the parties’ minor daughter to the mother, with visitation rights granted to the father. The father was ordered to pay child support.
In August 1990 the father alleged that the parties’ daughter, who was five years old at the time, had reported to him that she had been fondled by the mother’s boyfriend. The county sheriff issued an arrest warrant for sexual assault in the first degree against the mother’s boyfriend, C.L.B., who was on probation at the time for a conviction of sexual misconduct upon another minor. The Shelby County Department of Human Resources (DHR) opened a case file and moved to investigate the allegations, and a dependency proceeding was initiated in the juvenile court. On August 31, 1990, the juvenile court ordered that temporary custody of the child be vested in DHR; physical care of the child was temporarily placed with the father, and the mother was allowed supervised visitation rights. The juvenile court also ordered all parties to ensure that the child had no contact with C.L.B. and set the matter down for further review.
In September 1990 the father filed a petition for modification in the circuit court, seeking permanent custody of the child. At this time DHR withdrew its dependency petition in the juvenile court. The father alleged in his petition that the mother had provided the child with insufficient care and had continued her relationship with C.L.B. At this time he also filed a motion for orders pendente lite, requesting that the circuit court adopt the juvenile court’s order that temporary custody remain with him pending a full hearing on the merits. The circuit court ruled in favor of the father’s pendente lite motion.
*85 In February 1991 the mother filed an answer to the father’s modification petition, as well as a counterpetition 'for an increase in child support. In March 1991, after an ore tenus proceeding, on_ these issues, the trial court entered an order denying the father’s petition to modify custody. The trial court did, howevei;, modify the divorce decree to contain a provision ordering the mother not to allow C.L.B. to go into the presence of the cMld. The mother was further ordered not to allow any person of the opposite sex to stay overnight with her when the child was present. The trial court increased the amount of child support to be paid by thé" father and awarded the mother’s attorney fees in the amount of $3,000.
The father appeals, contending that the trial court was plainly and palpably wrong in denying his petition for modification of custody. The father also contends on appeal that the trial court erred in awarding.. an attorney’s fee to the mother’s attorney. We affirm.
The proper standard to be‘Used’by trial courts in child custody modification cases is set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Under McLendon the parent seeking a change must prove that the change in custody would '“materially promote” the child’s best interests and welfare. Because of the need for-stability . in a child’s life, the parent seeking the modification must prove to the court’s satisfaction that the positive good .brought" about by a custody change will more than offset the inherently disruptive effect caused by uprooting the child. Id .“ This is a very stringent standard.
At trial the parties’ child was ques.-tioned by the trial judge. The child testified that at a time when she was living with her mother, C.L.B. had touched her on the outside of her clothing on “both places where you use the bathroom.” She indicated that this had occurred one time and lasted for a short moment. She testified that she was afraid of C.L.B. because of what he had done to her and stated that although she told the father about the incident, she did not inform the mother. 'She further testified that when she lived with the mother, C.L.B. occasionally spent the night. When questioned by the judge, the child indicated that she would prefer to live with the father but would also like living with the mother if C.L.B. were not there. She said that she loves both parents.
Vickie Whitfield, an investigator for the Shelby County DHR in the dependency proceeding, testified to extensive experience in interviewing children in neglect and abuse cases. Her investigation in this case included interviews with the child, the parents, and C.L.B. Based on what the child told her, Whitfield classified the matter as a sexual molestation case. Whitfield testified that the mother initially told her that she did not believe C.L.B. had molested the child and that she accused the husband of coaching the child. She further testified that following early interviews with the mother, she felt the mother was not emotionally strong enough to protect the child. However, she stated that after conducting several more interviews, she began to feel that the mother had gained emotional strength and better understood the importance of keeping the child away from C.L.B. Whitfield also acknowledged that since the initiation of these proceedings, the mother has done everything required of her by DHR.
The depositions of Dr. Robert Gray, a pediatrician, and Dr. Douglas Martin, a dentist, were also introduced into evidence by the father. Dr. Gray testified that he conducted an examination of the child in August 1990 at the request of DHR and that he took case histories from the child and a DHR case worker. He stated that nothing in the examination caused him to disbelieve the story as reported by the child, nor did he feel that she had been coached. He also stated that there were no physical signs proving or disproving that a ■fondling incident had occurred, but that this was to be expected in such cases. Dr. Martin, who examined the child’s teeth at the father’s request, testified that a number of her teeth were in a state of serious decay as a result of her not visiting the dentist often enough.
*86 C.L.B., who was 39 years old at the time of trial, testified that he had been acquainted with the mother for 14 years and acknowledged that he was her boyfriend at one time. He admitted to sleeping at the mother’s home on a couple of occasions in May 1990, although he claimed that the child was not then present. He denied ever having been left alone with the child. When questioned at trial about the specifics of the child abuse allegations in this case, he exercised his fifth-amendment privilege against self-incrimination. He admitted to a prior conviction, in August 1988, for sexual misconduct with a minor, his niece. C.L.B. claimed that the mother had not discussed with him his duty to stay away from the child; however, he stated that he had not visited the mother's residence since the proceedings began. He said that although he still loved the mother, he would keep away from her “if that’s what it takes.”
The mother, who was 26 years old at the time of trial, currently lives in a mobile home on her parents’ property and has been employed as a phlebotomist for a biomedical lab since August 1990. She maintained in her testimony that she is fit to have custody of the child and that she keeps a clean, comfortable home, providing a proper environment for the child. The child will attend school near her home if she is returned to her, the mother said. She stated that she has taken the child on several occasions to a dentist at the University of Alabama in Birmingham. She testified that she had never observed C.L.B. abusing the child and that the child had never reported any such occurrence to her. She maintains that she was unaware of C.L.B.’s previous conviction for a sexual offense until the father filed his complaint. The mother asseverated that the child had not been in the presence of C.L.B. since the latter part of August 1990, when the dependency proceeding was initiated, and that she herself had not seen C.L.B. since September 1, 1990. The mother’s parents, who live in a house on the property where the mother's trailer is located, appeared on behalf of the mother and testified to a pleasant relationship between the mother and the child, stating that they felt the child was well cared for by the mother.
The father, who lives with his mother in her house, is employed as a design draftsman. At trial he testified that the child has adjusted well since her physical custody was placed with him and that he and the child’s grandmother take good care of her. The child has been attending a school near the father’s residence. She previously lived with the father for the entire summer of 1989 when he was stationed with the military in Texas. The father testified that he observed C.L.B. at the mother’s residence on a number of occasions in the spring of 1990, prior to the initiation of the proceedings. At these times, he said, the mother’s trailer was in a state of disarray and the child was unclean and improperly clothed. It was his opinion that the mother could not be trusted to keep C.L.B. away from the child and was unfit to have the child’s custody.
Billing records placed in evidence at trial indicate that the telephone at the mother’s residence was registered to C.L.B. until September 9, 1990. The record also reveals that, after the dependency proceedings were underway in August 1990, a number of calls were placed from the mother’s residence to C.L.B.’s residence and his place of work. Similar calls were also placed from the mother’s residence in November and December 1990, one of which lasted for 78 minutes. The record further reveals that numerous calls were placed as late as February 1991 from C.L.B.’s residence to the mother. One such call lasted for 80 minutes.
We note that when ore tenus evidence is presented to a trial court in a child custody proceeding, the court’s judgment is presumed correct and will be set aside only for an abuse of discretion or where the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Batton v. Batton, 496 So.2d 68 (Ala.Civ.App.1986).
Reviewing the record with the attendant presumption, and recognizing our strict standard for a change of custody, we find no such abuse of discretion. No evidence was presented to indicate that the mother *87 has failed to abide by the court orders to ensure that the child has no further contact with C.L.B. There was no evidence that the mother was aware of C.L.B.’s prior conviction, and testimony indicated that she cooperated with DHR and the juvenile court once she understood the situation. She testified to her resolve to protect the child, and the divorce decree, as modified by the trial court, contains a clear statement of her obligation to provide such protection.
However, we take note of the seriousness of the allegations in this' case and share the concerns of the father that the mother continue to take all necessary steps to keep C.L.B. out of the presence of the' child. We would emphasize that our inclination to reverse on this issue is dispelled largely by the strict order of the trial court relating to C.L.B.’s future contact with the child. We caution the mother that a violation of such order is likely to be a material consideration in future attempts at changing custody.
The father has asserted that the trial court erred in sustaining several objections to questions asked of certain parties called to testify by the father. We have examined the entire record and find that any error complained of did not injuriously affect the substantial rights of the father in this matter.
The father also maintains that the trial court erred in awarding an attorney’s fee to counsel for the mother. He argues that such an award was unwarranted in light of the serious nature of the harm he sought to prevent and further contends that the mother should not be considered a prevailing party. This court has held in numerous instances that an award of an attorney’s fee is within the discretion of the trial court. Price v. Price, 360 So.2d 340 (Ala.Civ.App.1978). It was within the trial court’s sound discretion to award a reasonable fee to the mother’s attorney for a-successful defense of the action for custody modification and a successful prosecution of the action for child support modification. The child’s custody was not transferred from the mother. The father testified that although he was voluntarily paying $260 per month in child support at the time of trial, the original divorce decree provided that he pay $100 per month in support. The trial court ordered that this obligation be increased to $216 per month. We find that the court’s exercise of its discretion in awarding an attorney’s fee was not plainly and palpably in error.
The judgment of the trial court is affirmed.
The mother’s request for an attorney’s fee for representation on appeal is denied.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.