The parties were divorced in 1992, and the mother was awarded custody of the parties' seven-year-old son. In August 1994, the father filed a petition seeking permanent custody, as well as temporary custody pendente lite.
After hearing evidence that the child had been physically abused by the mother's live-in boyfriend, the circuit court issued an ex parte order removing the child from the mother's home and awarding temporary custody pendente lite to the father.
Although the abuse by the mother's boyfriend had occurred in April 1994, the father did not learn of it until August 1994, when, during a time of visitation with the child, he became concerned that the child was being neglected. The father took the child to the Department of Human Resources (DHR) and upon doing so learned that DHR already had a physical abuse file on the child. When a DHR social worker investigated the abuse charge against the mother's boyfriend, the social worker learned that the mother had asked her boyfriend to discipline the child *Page 1174 
and that the boyfriend had whipped the child with a belt. The whipping had caused large purple bruises on the child's buttocks and thighs.
Officials at the child's school noticed the bruises on the afternoon of April 14 and telephoned the police. A police officer questioned the child and then telephoned the mother. When the mother and her boyfriend arrived at police headquarters, the mother admitted that she had seen bruises on her child that morning, but she said they had not looked bad. When the child removed his pants and she looked at the bruises again, however, the mother acknowledged that the bruises were severe.
The DHR social worker concluded that the child would be safe if returned to the home with the recommendation that the mother not allow the boyfriend to administer any more punishment to the child. The social worker decided that the abuse was a "one-time thing," rather than an "ongoing abusive situation," and that the mother was "a non-offending parent [who] was protective" of the child. The abuse case was, however, referred to the district attorney's office. The boyfriend was subsequently indicted and convicted for child abuse.
The father had temporary custody of the child for 11 months before the final hearing. Then, after an ore tenus proceeding, the trial court found "that there ha[d] been a material change in circumstances, which [was] cause for modification of the divorce decree as to custody of the minor child." The court followed the recommendation of the guardian ad litem by awarding joint custody to both parties, with the father having primary custody during the school year and the mother having primary custody during the summer months.[1]
On appeal, the mother claims that the trial court failed to follow the standard established in Ex parte McLendon,455 So.2d 863 (Ala. 1984).
 "Under McLendon, the parent seeking a change must prove that the change in custody would 'materially promote' the child's best interests and welfare. Because of the need for stability in a child's life, the parent seeking the modification must prove to the court's satisfaction that the positive good brought about by a custody change will more than offset the inherently disruptive effect caused by uprooting the child. [McLendon, 455 So.2d at 866]. This is a very stringent standard."
T.P.K. v. P.L.K., 593 So.2d 84, 85 (Ala.Civ.App. 1991). The entry of a pendente lite order does not shift the McLendon rule burden of proof. Sims v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987). Therefore, the father had the burden of satisfying the stringent McLendon standard. After a careful review of the record before us, we conclude that he did not meet that burden.
The evidence presented at the final hearing established that the father lives in a double-wide trailer on a farm in Lowndes County with his parents and his brother. He owns no property other than his truck. He has no savings or checking accounts. He does "odd jobs for cash," gives his parents the money, and they pay his bills. He is an eighth-grade dropout, but he has an associate's degree in electronics. He has been arrested for disorderly conduct, public intoxication, harassment, and trespassing. He has two convictions for possession of marijuana. He testified that he still used marijuana and had smoked marijuana as recently as two weeks before trial, but he said he had never used the drug in front of his son. At trial, he admitted that he "could not pass a drug test today." The father denied that he had ever tried to commit suicide. The father's mother testified that he had tried to commit suicide twice. She stated, however, that ever since the child had come to live with the father, the father had been more responsible.
The mother owns her own home in Montgomery and is employed in a clerical position with a state agency. She has held that job *Page 1175 
for five years. She has no criminal record and does not use drugs. At the final hearing on the father's petition to modify custody, the mother testified that she was no longer living with or involved with her former boyfriend. She stated, at the final hearing on July 18, 1995, that the last time she had seen the boyfriend was in October 1994. On cross-examination, she admitted that she had been present with her boyfriend at his sentencing hearing and that, at that time, they had discussed marriage. The record before us does not disclose the date of the boyfriend's sentencing hearing.
The child's daycare keeper testified that since the child had gone to live with his father, his behavior had improved, he had been more relaxed, and he had appeared to be generally well-adjusted. The trial court questioned the child in camera, and the child stated that he wanted to live with his father during the school year and with his mother during the summer. The guardian ad litem made the same recommendation.
The record reveals that the primary reason the father sought custody was his concern for the child's safety after the abuse by the mother's boyfriend. According to the mother's testimony, the abusive boyfriend was no longer a factor by the time of the final hearing in this case. The father introduced no evidence to refute that testimony. Although the father elicited an affirmative answer from the mother on cross-examination as to whether, at the time of the boyfriend's sentencing, she was still involved with and had considered marrying the boyfriend, the father did not introduce evidence of the date of the sentencing hearing or otherwise attempt to discredit the mother's testimony that she had not seen the boyfriend since October 1994. Compare T.P.K. v. P.L.K., 593 So.2d at 86 (wherein this court affirmed the trial court's order denying the father's motion to modify custody despite the fact that the father introduced evidence that the mother could not be trusted to keep her abusive boyfriend away from the child).
Under McLendon, the father had the burden of proving that a change in custody would materially promote the child's best interests and welfare. This, in our opinion, he failed to do.
In view of the father's criminal convictions, unsteady employment history, possible emotional instability, and drug use, it appears to us that the considerations in favor of the mother's having custody outweighed the considerations weighing in favor of the father's having custody. However, even if we determined that the considerations were equally balanced between the mother and the father, we would have to conclude that the father had not met his burden of proof. When there are "equal advantages and disadvantages to living with either the mother or the [father]," then moving the child cannot be said to materially promote the welfare of the child. Ex parte Couch, 521 So.2d at 989. "[T]he preference of the child, regardless of h[is] age and maturity, is not determinative of the issue of custody but is merely a factor the trial court may consider in reaching its decision. Ezell v. Hammond, 447 So.2d 766
(Ala.Civ.App. 1984)." Glover v. Singleton, 598 So.2d 995, 996
(Ala.Civ.App. 1992).
 "[A] change of custody from one parent to another is not a decision to be made lightly. On the contrary, it may be [made] only where the evidence discloses an obvious and overwhelming necessity for a change of custody. Whitfield [v. Whitfield, 570 So.2d 700 (Ala.Civ.App. 1990)]. Here, there is simply no evidence to show that a change of custody is necessary."
Glover v. Singleton, 598 So.2d 995, 996 (Ala.Civ.App. 1992).
Each party's request for attorney fees on appeal is denied.
The judgment of the trial court is reversed and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result only.
[1] "This court has previously interpreted court-approved joint custody arrangements that provide that one parent has 'primary physical custody' during the regular school year and that the other parent has 'primary physical custody' during the summer months as legally placing 'joint or split physical,' rather than primary, custody with each parent. Hovater v. Hovater,577 So.2d 461, 464 (Ala.Civ.App. 1990)." Reuter v. Neese,586 So.2d 232, 234 (Ala.Civ.App. 1991). *Page 1176