[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 553 
The parties were divorced in Texas in 1992. Jennifer Lynn Estrada ("the mother") was awarded custody of the parties' two sons, who were then two years old and four years old. Carl J. Redford ("the father") was ordered to pay child support. In 1996, the father moved to modify the divorce judgment, seeking custody of the children. The Morgan Circuit Court modified the judgment, awarding custody of the children to the father and ordering the mother to pay $320 per month in child support.
In December 2000, the mother moved to modify the 1996 judgment, seeking to have the children returned to her custody. She alleged that the children were being emotionally scarred by their relationships with the father and his current wife. She also alleged that the father and his wife had unreasonably interfered with the children's visitation with their maternal grandparents. The father denied those allegations and counterclaimed, seeking an increase in child support from the mother. Pursuant to the mother's request, the trial court appointed a guardian ad litem for the children. After a hearing in October 2001, the trial court, on January 15, 2002, denied the mother's request for a modification of custody. It also ordered the mother to pay the father $450 per month in child support.
On February 8, 2002, the mother filed a postjudgment motion, alleging, among other things, that since the hearing in October 2001 she had been laid off from her job, that she was presently drawing only $247 per week in unemployment-compensation benefits, and that she was unable to pay $450 per month in child support. On March 21, 2002, the trial court entered the following notation on the case action summary sheet:
 "Motion for new trial denied. Court will consider modification of support upon submission of new CS-41's. Both parties ordered to submit CS-41's within 30 days hereof. Either party may ask for a hearing on recalculation; otherwise, the court will recompute child support."
On April 4, 2002, the father submitted a CS-41 form. The mother, who did not submit a new CS-41 form, filed her notice of appeal on May 1, 2002. On that same date, the trial court noted on the case action summary sheet that the mother's pending motion was "moot."
 I.
The mother filed her notice of appeal when the trial court had not yet ruled on her postjudgment request for a modification of her child-support obligation. On the same day the mother appealed, the trial court determined that the mother's request was "moot." An appeal ordinarily lies only from a final judgment. See § 12-22-2, Ala. Code 1975; Beanv. Craig, 557 So.2d 1249, 1253 (Ala. 1990). An order is generally not final unless it disposes of all claims or the rights or liabilities of all parties. Ex parte Harris, 506 So.2d 1003, 1004 (Ala.Civ.App. 1987). Because "`jurisdictional matters are of such *Page 554 
magnitude that we take notice of them at any time and do so even ex meromotu,'" Wallace v. Tee Jays Manufacturing Co., 689 So.2d 210, 211
(Ala.Civ.App. 1997) (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala. 1987), we must determine whether we have jurisdiction over this appeal or whether this appeal is from a nonfinal judgment.
A change in the mother's income that occurred after the trial is "new evidence," not "newly discovered evidence." See Ex parte Patterson,853 So.2d 260, 263 (Ala.Civ.App. 2002) (Yates, P.J., concurring specially). When a party has new evidence as to her income, she may be entitled to a modification of her child-support obligation if she files a petition to modify. See Rule 32(A)(3)(b), Ala.R.Jud.Admin. (establishing a rebuttable presumption that child support should be modified when "the difference between the existing child support award and the amount determined by the application of [the Rule 32 Guidelines] varies more than ten percent (10%)").
A petition to modify, however, is a separate action that requires a proper filing, the payment of a filing fee, and service. See Ex parteDavidson, 782 So.2d 237, 240 (Ala. 2000); Farmer v. Farmer, 842 So.2d (Ala.Civ.App. 2002). The mother did not pay a filing fee for, and did not serve the father with, a petition to modify her child-support obligation. Therefore, the mother's request to modify child support was not properly before the trial court. Because the mother's request was not properly before the trial court, the trial court's failure to rule on the request does not prevent the trial court's judgment from being final.See Ex parte Davidson; Farmer v. Farmer; and Ex parte Patterson, supra.
 II.
The trial court determined that the mother had failed to meet her burden under Ex parte McLendon, 455 So.2d 863 (Ala. 1984); that determination is due to be affirmed.
Both parties have remarried since their divorce. The mother, her husband, and their two children (an eight-year-old boy and a two-year-old girl) live in Nashville, Tennessee. The father and his wife live in Marshall County, Alabama, with 5 children: their 6-year-old daughter; the wife's 2 children from a prior marriage (a 13-year-old girl and a 10-year-old boy); and the 2 children whose custody is at issue in this case and who, at the time of trial, were 10 and 13 years old.
The mother presented evidence indicating that the father's relationship with the older son was strained as a consequence of what, she thought, were the father's overly harsh methods of discipline. The evidence tended to show that the father occasionally slapped or spanked the children; the mother did not use corporal punishment. The mother presented evidence indicating that the father and the older son had had several physical altercations. The older son testified that his father had sometimes lost his temper; he denied, however, feeling "unsafe" in his father's presence. The older son said that he believed the father and his wife favored their child and the wife's children from a former marriage over his brother and him. He told the trial court that he wanted to live with his mother because the schools in Tennessee were better than those in Marshall County, because he would be able to play soccer for two seasons during the year instead of one, because his mother's house was cleaner and less crowded than his father's, and because his mother had promised him an allowance. He said he liked his mother's *Page 555 
husband because he played basketball with him.
Although the younger son also testified that he wanted to live with his mother, he was more equivocal and did not criticize his father and stepmother. He testified that his father had spanked him on occasion, but he said that the spankings were not abusive and that he had "probably deserved" to be spanked. The older brother acknowledged that it was he who had asked the mother to petition for a modification of custody and that the younger brother had no real preference for which parent had custody.
The mother presented evidence indicating that the father and his wife had hindered or prevented the children's visitation with their maternal grandparents, who live in Marshall County. The mother testified that the father would not allow the maternal grandparents to pick the children up at the father's home on the weekends when the mother had visitation and he had refused to allow the maternal grandparents to keep the children at their home until the mother arrived from Tennessee. The father presented evidence tending to show that his relationship with the wife's parents had become strained because he suspected that they had reported him to the Department of Human Resources ("DHR") for suspicion of child abuse and for having an unclean house.
The guardian ad litem recommended that custody be changed to the mother. The trial court rejected that recommendation.
When there is a prior custody judgment, the parent seeking a change in custody has a heavy burden of proof. Merely showing a material change of circumstances is insufficient. The petitioner must establish that a change in custody will materially promote the child's best interests and that the benefits of the requested change will more than offset the inherently disruptive effect of uprooting the child. Ex parte McLendon,455 So.2d 863 (Ala. 1984). The ore tenus rule applies to custody-modification proceedings. Ex parte Patronas,693 So.2d 473 (Ala. 1997).
 "When [an appellate court] reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: '"A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong. . . ."' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App. 1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. `In child custody cases especially, the perception of an attentive trial judge is of great importance.' Williams v. Williams, 402 So.2d 1029, 1032
(Ala.Civ.App. 1981)."
Ex parte Fann, 810 So.2d 631, 633 (Ala. 2001). This court is not allowed to reweigh the evidence or to substitute its judgment for that of the trial court. Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996).
In the present case, the trial court found that both parents loved the children and that both homes were "suitable in all respects." Its judgment provides that the maternal grandparents may pick the children up at the father's home on Friday night of the weekends when the mother has visitation and may keep them until the mother arrives from Tennessee or until *Page 556 
11:00 a.m. Saturday, whichever is earlier. The judgment also states, in pertinent part:
 "The court finds relevant law to be set forth in Pullum v. Webb, 669 So.2d 925 [(Ala.Civ.App. 1995], wherein the Alabama Court of Civil Appeals found that a simple change in circumstances such as the erosion of the relationship between the mother and the children is insufficient to support the change of custody. While the court found that the [children's] preference is an important factor of . . . consideration, it also found that it was not controlling. . . . The court notes the report of the Guardian Ad Litem and his recommendation in this case and is in accord with the Guardian with respect to the father's bizarre and self-centered behavior.
 "Although the court is impressed with the mother's commitment to [the children], it is not satisfied that she has met the standards set by Ex parte McLendon
with regard to overcoming the inherently disruptive effects of the relocation. From all the court was able to determine from the testimony offered at trial on behalf of the father, the children were extremely well adjusted. The court's observation of the children during the time that they testified out of the presence of their parents confirmed that they were fine young men who are doing well in school and in their interpersonal relationships with friends and family.
 "The father is encouraged to seek counseling for his sons and himself in order to enhance his relationship with them. While the court does not doubt his commitment to his children, it is obvious that the father engages in behaviors which are counter-productive and not in the best interest of the children."
The trial court correctly concluded that neither the preferences of the children, see Trusty v. Newton, 678 So.2d 1173, 1175 (Ala.Civ.App. 1996), nor the recommendation of the guardian ad litem, see Moody v.Nagle, 811 So.2d 546, 548 (Ala.Civ.App. 2001), is controlling. The evidence in the record fully supports the trial court's factual findings and legal conclusions. Its judgment is therefore affirmed.
AFFIRMED.
Yates, P.J., and Pittman, J., concur.
Thompson, J., concurs in the result.
Murdock, J., dissents.