909 So.2d 206 (2005)
G.H.
v.
K.G. and Y.G.
2031100.
Court of Civil Appeals of Alabama.
March 11, 2005.
*207 W. Stanley Garner, Jr., Ozark, for appellant.
Joseph J. Gallo, Daleville, for appellees.
CRAWLEY, Presiding Judge.
G.H. ("the father") timely appeals from an award of custody of his daughter K.V.H. ("the child") to K.G. and Y.G. ("the maternal grandparents"). We reverse and remand with instructions.
The child is the daughter of G.H. and L.G.H. ("the mother"). The father and the mother, who were never legally married, separated when the child was four or five years old. The child lived with her mother after her parents' separation until her mother was arrested for manufacturing methamphetamines; the mother was subsequently convicted of that offense. After her mother was imprisoned, the child went to live with the maternal grandparents. The father filed a petition for custody. On July 9, 2003, the juvenile court awarded custody of the child to the father.
On January 15, 2004, the maternal grandparents filed a petition seeking custody of the child. Thereafter, in May 2004, the maternal grandparents moved for and received extended summer-visitation privileges.
On July 9, 2004, there was a hearing on the maternal grandparents' custody petition.[1] *208 At that hearing the court received ore tenus testimony from the following people: the child, who is now 16 years old; the maternal grandfather; W.H. ("the stepmother"); and S.H. (the paternal grandmother). On July 19, 2004, the juvenile court entered an order finding the father unfit for custody and awarding custody to the maternal grandparents. On August 16, 2004, the father moved, pursuant to Rule 77(d), Ala. R. Civ. P., for an extension of time to appeal. The following day the juvenile court granted the motion, extending the time to appeal until September 1, 2004. The father timely appealed, filing his notice of appeal on August 31, 2004.
The maternal grandparents styled their petition as a petition to have the child declared dependent. However, in the petition the maternal grandparents state: "We would like custody of our grandchild." Additionally, the juvenile court's order refers to the action as one in which "the minor child's maternal grandparents, [K.G. and Y.G.,] and the minor child's father, [G.H.,] are seeking custody of the minor child ...." Although it did include a finding of dependency in its order, the juvenile court first adjudicated the case as a custody dispute by applying the presumption that a parent has a prima facie right to custody of his or her child as against a nonparent. Ex parte Terry, 494 So.2d 628 (Ala.1986); Ex parte Mathews, 428 So.2d 58 (Ala.1983). Thus, we conclude that the maternal grandparents' petition is actually more in the nature of a custody petition and will, therefore, be analyzed as such. See J.O.J. v. R.R., 895 So.2d 336 (Ala.Civ.App.2004); Anonymous v. Anonymous, 504 So.2d 289 (Ala.Civ.App.1986); cf. Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988).
"The ore tenus rule applies to custody-modification proceedings. Ex parte Patronas, 693 So.2d 473 (Ala.1997).
"`When [an appellate court] reviews a trial court's child-custody determination that was based upon evidence presented ore tenus, we presume the trial court's decision is correct: "`A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong ....'" Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993) (citations omitted). This presumption is based on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. This opportunity to observe witnesses is especially important in child-custody cases. "In child custody cases especially, the perception of an attentive trial judge is of great importance." Williams v. Williams, 402 So.2d 1029, 1032 (Ala.Civ.App.1981).'
"Ex parte Fann, 810 So.2d 631, 633 (Ala.2001). This court is not allowed to reweigh the evidence or to substitute its *209 judgment for that of the trial court. Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996)."
Estrada v. Redford, 855 So.2d 551, 555 (Ala.Civ.App.2003).
"It is well-settled that a natural parent has a prima facie right to the custody of his or her child as against a non-parent. Ex parte Mathews, 428 So.2d 58 (Ala.1983). To overcome this presumptive superior right of a parent to his/her children, the non-parent must present clear and convincing evidence that the parent is unfit or unsuited for custody and that the best interests of the child will be served by granting custody to the non-parent, rather than the natural parent. Ex parte Terry, 494 So.2d 628 (Ala.1986)."
P.L.H. v. E.C., 601 So.2d 1018, 1020 (Ala.Civ.App.1992).
The juvenile court's order states that "[a]fter considering the totality of the evidence presented the court finds that the minor child's father is unsuited for custody."[2] The testimony concerning the father's fitness as a parent was conflicting. Some testimony revealed that the father allows the child to smoke and has provided her with cigarettes. In addition, some of the testimony indicated that the father has consumed marijuana and methamphetamines while the child was present. Additionally, the child testified that the father had committed acts of domestic violence. She specifically accused the father of striking her. She also accused the father of regularly verbally and physically assaulting the stepmother. The stepmother denied the allegations of physical abuse, but admitted to intense verbal arguments. There is clear and convincing evidence in the record that, if believed, is sufficient to find the father unfit or unsuited for custody. Therefore, the finding that the father is unfit or unsuited for custody is correct.
After finding the father unfit, the juvenile court incorrectly applied the standard enunciated in Ex parte McLendon, 455 So.2d 863, 865-66 (Ala.1984), stating in its order:
"`The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. The parent seeking the custody change must show not only that she is fit, but also that the change in custody materially promotes the child's best interest and welfare.' Ex parte McLendon, 455 So.2d 863 (Ala.1984).
"Therefore[,] the issue before the court is whether the [maternal] grandparents have met their burden of showing that the proposed change in custody will materially promote the minor child's best interests. After reviewing the evidence presented[,] the court believes that the [maternal] grandparents have shown that their custody of the minor child will materially promote her best interests. The court further believes that the maternal grandparents have shown to the reasonable satisfaction of the court that they can provide a stable, secure[,] and nurturing environment in which the child will grow and mature. The court finds that the [maternal] grandparents have demonstrated their bond with and love for this minor child and the court believes that under their guidance the child will grow into a productive member of society. The [maternal] grandparents have further shown that they are physically, financially[,] *210 and emotionally able to care for and supervise the minor child. After considering the totality of the evidence presented[,] the court finds that the maternal grandparents have met their burden of proof ...."
However, in the instant case, the father was awarded custody of the child on July 9, 2003. The father neither transferred custody of the child to a third party nor was divested of custody before the July 19, 2004, order awarding custody to the maternal grandparents. See Ex parte McLendon, supra. Thus, the maternal grandparents were not subject to the heightened Ex parte McLendon standard. Instead, as noted above, they were required to prove first that the father was unfit for custody and then that the best interests of the child would be served by their being awarded custody. P.L.H. v. E.C., 601 So.2d at 1020 (requiring a third party seeking custody to prove that "the parent is unfit or unsuited for custody and that the best interests of the child will be served by granting custody to the nonparent, rather than the natural parent"); see also Ex parte Terry, supra; and Smith v. Smith, 448 So.2d 381, 383 (Ala.Civ.App.1984) ("The polestar in custody matters... is truly the best interest of the child.").
An inquiry into the best interests of the child reveals that the juvenile court's determination that the maternal grandparents had met the second prong of their burden of proof is plainly and palpably wrong and, therefore, that determination is due to be reversed.
The child testified at the July 9, 2004, hearing. She testified that she would rather live with her maternal grandparents than with her father. She testified that she had been diagnosed with manic depression and had been prescribed Lithium and Effexor. However, she testified that while living with her maternal grandparents she had not taken her medication. Additionally, she testified that her maternal grandparents had not taken her to see her psychiatrist because she did not want to go.
The child's testimony also revealed that, although her curfew while staying with her maternal grandparents is 10:30 p.m. on weeknights and 11:30 p.m. on weekend nights, she does not have to be inside the house after her curfew. Instead, she is allowed to come in, ask permission to go back outside, and then stay outside without supervision until 1:00 a.m. or 2:00 a.m. The child also testified that while staying with her maternal grandparents she started a sexual relationship with a 19-year-old boy. The child stated that after she is allowed back outside after curfew, she often sits and talks with her boyfriend in his car. The child admitted that she drinks beer, vodka, and "pretty much anything." The child also stated that she, her boyfriend, and her other friends regularly hang out at the local pool hall.
The maternal grandfather also testified at the July 9, 2004, hearing. His testimony regarding his wife, the maternal grandmother, was that she had a congenital degenerative muscle disease. Additionally, the maternal grandfather's testimony regarding his wife revealed that she did not drive and was not ambulatory without the aid of a walker or a kitchen counter to help her maintain her balance.
Even though the child admitted to alcohol consumption in her testimony, the maternal grandfather denied that the child drank alcohol, except for one occasion when the child was with her father at the age of 13. The maternal grandfather also admitted that he knew that the child was having sex, but he stated that he did not talk to her about it. Even though he was unsure whether the maternal grandmother *211 had talked to the child about sex, the maternal grandfather maintained "[i]t hadn't been my time to talk to her."
The maternal grandparents alleged in their petition that the father did not adequately provide for the child's medical needs. However, the record contains undisputed evidence that, in fact, the maternal grandparents do not provide for the child's medical needs. The stepmother testified that she made an appointment for the child to see an oral surgeon to remove the child's wisdom teeth. She testified that the appointment was on June 7, 2004. The maternal grandparents' extended summer visitation started on June 1, 2004, and the appointment was ultimately cancelled because the child was not going to go. Additionally, it is undisputed that the maternal grandparents do not require the child to see her psychiatrist or to take her medications for manic depression. Also, the maternal grandfather admitted that while the child lived with the maternal grandparents they had allowed her medicaid coverage to lapse for a month. The maternal grandfather also testified that he allows the child to leave the house after curfew if she asks permission. While the child is outside without supervision, the maternal grandfather admits that he is often asleep and that the maternal grandmother is virtually always sleeping at those times. He also conceded that he does not know how to stop the child from having sex.
A careful search of the record revealed that the juvenile court's determination that the maternal grandparents are "physically... and emotionally capable" of caring for and supervising the minor child and that "they can provide a stable, secure[,] and nurturing environment in which the child will grow and mature" is plainly and palpably wrong. The undisputed evidence reveals that the maternal grandparents did not meet their burden of proof that the child's best interests would be served by their being awarded custody. Therefore, the juvenile court's judgment awarding custody to the maternal grandparents is due to be reversed.[3]
Although at its inception this case was more in the nature of a custody dispute than a dependency proceeding, our determination that neither of the parties before the court are proper custodians at this time necessarily makes the child dependent, as the trial court found in its judgment. On remand, the trial court is instructed to make an appropriate disposition of the child, pursuant to 12-15-71(a), Ala.Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and BRYAN, JJ., concur in the result, with writings.
THOMPSON and MURDOCK, JJ., dissent, with writings.
PITTMAN, Judge, concurring in the result.
Judge Thompson's dissent correctly notes that the juvenile court found the *212 child to be dependent, thus invoking the juvenile court's jurisdiction to determine custody throughout the child's minority pursuant to § 12-15-30(b)(1), Ala.Code 1975. However, based on the evidence adduced at trial, I do not believe that substantial evidence supports the juvenile court's determination that awarding custody of the child to the maternal grandparents was in the child's best interests. Because I agree that the custody award to the maternal grandparents must be reversed, I concur in the result. In addition, I write specially to note that once a dependency determination is made, the dependency statutes imply that notice to the Alabama Department of Human Resources ("DHR") should be given. See § 12-15-71(a), Ala.Code 1975. On remand, I would expect the trial court to request DHR supervision and review of any available relative resources with respect to the child in order to determine the best placement for the child.
BRYAN, Judge, concurring in the result.
Because I agree that the award of custody to the maternal grandparents without any supervision by a third party must be reversed, I concur in the result. I write specially to point out that § 12-15-71(a)(4), Ala.Code 1975, when read in pari materia with § 12-15-71(a)(3)c., Ala.Code 1975, would authorize the trial court on remand to award custody to a relative, including the maternal grandparents, subject to supervision by the Department of Human Resources.
THOMPSON, Judge, dissenting.
In the instant case, the maternal grandparents filed a petition in the juvenile court alleging that the child was dependent. In that petition, the maternal grandparents also indicated that they were seeking custody of the child. The maternal grandparents attached a "statement" made in support of their petition that alleged facts indicating that the child was a dependent child, as defined under § 12-15-1(10), Ala.Code 1975. The juvenile court later found the child to be dependent; neither party challenged the juvenile court's finding of dependency on appeal.
In O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App.1999), this court stated:
"`"When the petitioners alleged that the child was dependent, that terminology triggered the trial court to utilize the dependency statutes of the juvenile code."' W.T. v. State Dep't of Human Resources, 707 So.2d 647, 650 (Ala.Civ.App.1997), quoting C.P. v. M.K., 667 So.2d 1357, 1360 (Ala.Civ.App.1994) (Thigpen, J., specially concurring in part and dissenting in part). Upon finding a child to be `dependent,' the court may make any order of disposition necessary to protect the welfare of the child, including transferring legal custody of the child to a relative. § 12-15-71(a)(3)c., Ala.Code 1975; Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). This court held in W.T. that the parental presumption set forth in Ex parte Terry[, 494 So.2d 628 (Ala.1986),] and Ex parte D.J.[, 645 So.2d 303 (Ala.1994),] is not applicable in the dispositional phase of a dependency proceeding under § 12-15-71(a). W.T., supra. The appropriate standard to be applied in the dispositional phase of a dependency proceeding is the `best interests of the child' standard. Id. See also Jones, supra, and D.K.G. v. J.H., 627 So.2d 937 (Ala.Civ.App.1993). Further, there is no requirement that the court find a parent unfit when dependency is found and custody is placed with a relative to protect the welfare of the child. W.T., supra."
*213 See also A.J.J. v. J.L., 752 So.2d 499 (Ala.Civ.App.1999)(quoting with approval this court's holding in O.L.D. v. J.C.).
In this case, after finding the child dependent, the juvenile court should have applied the "best-interest-of-the-child standard" to determine if transferring legal custody of the child to the maternal grandparents was proper to protect the welfare of the child. See O.L.D. v. J.C., supra. The juvenile court's determination of dependency in this case obviated any necessity to apply the heightened custody-modification standard found in Ex parte McLendon, 455 So.2d 863 (Ala.1984), or to make any additional finding of unfitness as dictated by Ex parte Terry, 494 So.2d 628 (Ala.1986). However, any error in the juvenile court's application of the McLendon or Terry custody standards in this case is harmless error because the maternal grandparents necessarily met the "best interests" standard. See I.M. v. J.P.F., 668 So.2d 843, 845 (Ala.Civ.App.1995)("We note that the trial court applied the McLendon standard here rather than the `best interest' standard, but because the McLendon standard is more stringent, the trial court's error in that regard is harmless."); see also O.L.D. v. J.C., supra.
I find that the juvenile court's decision finding the child to be dependent and awarding custody to the maternal grandparents to be supported by the evidence in the record on appeal. Therefore, I must dissent.
MURDOCK, Judge, dissenting.
Unless we are to reweigh conflicting testimony received by the juvenile court ore tenus, see State Department of Human Resources v. R.E.C., 899 So.2d 251, 271 (Ala.Civ.App.2003) (Crawley, J., dissenting), rev'd, Ex parte R.E.C., 899 So.2d 272 (Ala.2004), the record before us requires us to affirm the juvenile court's judgment resolving the custody dispute between the parties. See Ala.Code 1975, § 12-15-30(b)(1). Although the juvenile court erred in forcing the maternal grandparents to meet the higher "material promotion" standard required under Ex parte McLendon, 455 So.2d 863 (Ala.1984), (rather than simply the "best interest" standard generally applicable in custody disputes, unaided by the presumption in favor of the natural parent when that presumption has been rebutted by a finding of unfitness as it was here, see, e.g., Ex parte Terry, 494 So.2d 628 (Ala.1986)) that error was harmless in light of the fact that the juvenile court nonetheless found in favor of the maternal grandparents. See I.M. v. J.P.F., 668 So.2d 843 (Ala.Civ.App.1995).
NOTES
[1] The case number in the Dale Juvenile Court was JU-02-224.04. On July 9, 2003, in cases numbered JU-02-224.02 and JU-02-224.03, the Dale Juvenile Court awarded G.H. custody of K.V.H. The juvenile court therefore had subject-matter jurisdiction to hear this case. Thompson v. Halliwell, 668 So.2d 43, 44 (Ala.Civ.App.1995) ("Once the juvenile court obtains jurisdiction in the case of a child, it retains jurisdiction ... until the child is 21 years old or until its jurisdiction is terminated by order of the juvenile court."); F.D.M. v. C.D.S., 646 So.2d 117, 118 (Ala.Civ.App.1994) ("The juvenile court exercises exclusive original jurisdiction of proceedings to determine custody when the `child is otherwise before the court.' § 12-15-30(b)(1), Ala.Code 1975.").
[2] Unsuited is a synonym for unfit. Ex parte N.L.R., 863 So.2d 1066, 1069 (Ala.2003)(assigning error to the trial court for ascribing different meanings to the terms unfit and unsuited).
[3] By reversing the trial court's findings regarding whether it is in the best interests of the child to grant custody to the maternal grandparents, we are not, as Judge Murdock's dissent claims, "reweigh[ing] conflicting testimony received by the trial court." 909 So.2d at 213. Nearly all of the conflicting testimony in the record related to the father. Regarding the maternal grandparents, the only possible conflict would be if the trial judge disbelieved the child's admission that she drinks alcohol and believed the maternal grandfather's denial of that admission. Otherwise, all testimony regarding whether it is in the best interests of the child to grant custody to the maternal grandparents was undisputed.